**Tanya Gay PIPPIN (Yearsley)**

v.

**David C. PIPPIN, Jr.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

April 23, 2008 Session.

June 4, 2008.

Permission to Appeal Denied by Supreme Court Dec. 15, 2008.

Mitchell A. Byrd, Chattanooga, Tennessee, for the Appellant, David C. Pippin, Jr.

Linda B. Hall, Soddy Daisy, Tennessee, for the Appellee, Tanya Gay Pippin (Yearsley).

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Tanya Gay Pippin ("Mother") and David C. Pippin ("Father") were divorced in 2004 following a twelve year marriage. Mother was designated the primary residential parent for the parties' two children. In June of 2005, Father filed a petition seeking to change custody. The petition was resolved by agreement following mediation and a revised permanent parenting plan and accompanying order were entered in January of 2006. Mother remained the children's primary residential parent. In December of 2006, Father filed a second petition for change of custody. The Trial Court determined that Father had failed to establish that a material change in circumstances had occurred after entry of the January 2006 order. The primary reason for the Trial Court's ruling was that all but one of Father's alleged changes in circumstance either were known or reasonably anticipated when the January 2006 order was entered, and the one new change did not constitute a material change for purposes of changing custody. Father appeals raising various issues. We affirm.

## Background

Mother and Father married in 1992. Over ten years later, Mother filed a complaint for divorce. The parties have two children, a son, Brandon, who currently is thirteen years old, and a daughter, Caitlyn, who currently is twelve. The parties were living in Blount County, Tennessee when the complaint for divorce was filed. The parties entered into a marital dissolution agreement and submitted a proposed parenting plan to the court for approval. The proposed parenting plan designated Mother as the children's primary residential parent. Father's co-parenting time was every other weekend and the parties agreed on how to divide co-parenting time with respect to holidays and summer vacations, etc. The proposed parenting plan further stated that the parties would have joint decision-making responsibilities on several matters, including healthcare, religious upbringing, and educational decisions. The proposed parenting plan was approved and adopted by the Blount County Circuit Court in its final decree of divorce entered on January 5, 2004.

After the final decree was entered, Mother moved to Hamilton County and Father moved to Davidson County. Pursuant to a motion filed by Father, jurisdiction of this case was transferred to the Hamilton County Circuit Court (the "Trial Court"). Thereafter, in June of 2005, Father filed a petition to modify the final decree. Father claimed that there had been a material change in circumstances such that it was in the best interest of the children for Father to be designated as their primary residential parent. The petition provides no details as to what Father claimed constituted the material change in circumstances. In any event, the parties successfully mediated that petition for modification. A revised parenting plan was submitted to and adopted by the Trial

Court. In the revised parenting plan, Mother remained the children's primary residential parent. It also was determined that Father was behind in his child support payments, and he was ordered to make additional payments to eliminate the arrearage. An order incorporating the terms of the revised parenting plan was entered by the Trial Court on January 9, 2006.

On December 11, 2006, Father filed a second petition for modification. Father again claimed that there had been a material change in circumstances such that it was in the best interest of the children for Father to be designated the primary residential parent. As with the first petition, the second petition provides no insight into what Father claimed was the material change in circumstances, although the petition does state that the "children have expressed a desire to live with [Father] in Nashville, Tennessee."

Father served Mother with subpoenas and notices of deposition seeking to take the depositions of the two children. Mother filed a motion to quash the subpoenas and notices of deposition. Mother also requested that a guardian ad litem be appointed to protect the interests of the children in the event that Father was allowed to proceed with the depositions. Father opposed the motion to quash, claiming that he was entitled to depose the two children. Father likewise opposed Mother's request that a guardian ad litem be appointed. According to Father:

> Both children have expressed a desire to attend private schools and to live with their father in Nashville, Tennessee. The private schools are The Harpeth Hall School and Montgomery Bell Academy, both schools of high academic standards. The tuition would be waived for one of the minor children as the stepmother is a teacher at Montgomery Bell

Academy and the other child would be allowed admission for half the normal price....

> In spite of the fact the children have expressed a desire to live with their father and especially to attend these private schools, the mother, based on reasons unclear to the father ... has refused the children this opportunity. There is no good, valid reason why the children should not have the opportunity to attend these exclusive private schools given this situation....

> [T]he children are not in need of a guardian *ad litem* in this matter, as they are intelligent, articulate, and knowledgeable about the schools which they desire to attend....

The Trial Court entered an order denying Mother's request for the appointment of a guardian ad litem. However, the Trial Court granted Mother's motion to quash the subpoenas and notices of deposition. According to the Trial Court:

> It appearing that [Father], through counsel, has issued subpoenas for the minor children herein to give evidence at a Rule 34 deposition, and upon the Motion to Quash by [Mother], upon the response filed by [Father], upon argument by counsel, and upon the entire record as a whole, the Court finds that the deposition of [the children] pursuant to the discovery subpoena shall not go forward, but the children will be interviewed by the Court and counsel at the trial of this case regarding their stated preferences regarding primary residential placement.

Mother filed a motion in limine before the hearing on the petition for modification. In this motion Mother sought to: disallow any testimony regarding facts or circumstances that were in existence or known to [Father] on or before January 9, 2006 when this Court entered the

order adopting the [revised] Parenting Plan entered into between the parties.

In particular any testimony relating to the preference of the minor children to reside with [Father and] the children's opportunity and desire to attend the private schools of MBA and Harpeth Hall....

In short, Mother claimed that the alleged changes of circumstance supporting Father's first petition were identical to those supporting his second petition. As such, because Father's reasons for filing the second petition were known or reasonably anticipated when the order resolving the first petition was entered, Father could not rely on those same changes to support his second petition. Mother filed a portion of Father's deposition in support of her motion in limine. In relevant part, Father testified as follows:

Q. Tell me about the [first] petition that you filed in [2005] requesting a change of custody....

A. Basically, it's the same reason as now. The kids express over and over and over that that's what they want to do. The opportunity was still there for them in the future to be able to go to Harpeth Hall and MBA.

Q. When you filed [the first petition for modification in 2005], the basis of that petition was because the children had expressed to you a desire to attend these private schools?

A. Had expressed a desire to attend the private schools and to come live with me. It was the same issues again between Brandon [and his step-father] and he just did not want to be there.

The Trial Court apparently did not enter an order resolving Mother's motion in limine prior to the trial as no such order is contained in the record. However, the Trial Court did limit testimony at trial to events Father claimed took place after the

January 2006 order was entered. Following the trial, the Trial Court entered an order refusing to change the existing custody arrangement. As pertinent to this appeal, the Trial Court's order states:

The Court is asked to change the custody of [the] parties' minor children from the Mother to the Father. This is the Father's second Petition to Modify the Final Decree since the parties were divorced.... [I]n June of 2005, the initial Petition to Modify seeking a change in custody was filed by the Father. The parties reached an agreement and an order was entered on January 9, 2006, which modified the parties' Permanent Parenting Plan.

A second Petition to Modify custody was filed in December of 2006, again alleging a material and substantial change in circumstances which warranted the children's change of custody from the Mother to the Father. The Court finds that the second Petition to Modify must fail.

The Court specifically finds that all but one of the proffered material changes of circumstance of the [Father] were known at the time ... the last Petition to Modify was filed in 2005. But for the oldest child's preference to attend a private school in Nashville, Tennessee, all other elements of the [Father's] case have been litigated in the original petition of 2005. Standing alone, the fact that a twelve year old child wishes to move to Nashville to attend a private school, is not in and of itself a material and substantial change of circumstance to warrant the drastic action of a change of custody. While the Court is certainly interested in the reasonable preferences of children, that circumstance standing alone cannot be the basis for finding a material and substantial change of circumstances.

Father appeals raising three primary issues. First, he claims that the Trial Court erred when it quashed his notices to take the children's depositions. Second, Father claims the Trial Court erred when it refused to appoint a guardian ad litem on the children's behalf. Last, Father claims that the Trial Court erred when it found that there had not been a material change in circumstances. The only issue raised by Mother is her request for attorney fees incurred on appeal pursuant to Tenn.Code Ann. § 36–5–103(c).

### Discussion

■ The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R.App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn.2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn.2001). We review a trial court's evidentiary ruling under the abuse of discretion standard. *Brown v. Daly*, 83 S.W.3d 153, 157 (Tenn.Ct.App.2001).

■ We first discuss whether the Trial Court erred when it prohibited Father from taking the children's depositions. At the outset, we note that the Trial Court did not explain why it was quashing the notices of deposition. There is nothing in the record to indicate that the children were not competent to be witnesses. Their ages, standing alone, are not a suffi-

cient basis to conclude they were not competent. *See, e.g., State v. Caughron*, 855 S.W.2d 526, 537–538 (Tenn.1993) ("Under T.R.E. 601 ... no one is automatically barred from testifying simply because of age or mental status. So long as a witness is of sufficient capacity to understand the obligation of an oath or affirmation, and some rule or statute does not provide otherwise, the witness is competent.")(footnote omitted).

Tenn. R. Civ. P. 30.01 provides that "[a]fter commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination.... The attendance of witnesses may be compelled by subpoena as provided in Rule 45."[1] Tenn. R. Civ. P. 45.07 allows a trial court to quash a subpoena if it is "unreasonable and oppressive." There is nothing in the record to support a conclusion that the subpoenas in the present case were unreasonable or oppressive. Because we do not know why the Trial Court quashed the notices of deposition and subpoenas, and because we are unable to discern from the record any sufficient basis for the Trial Court to prohibit Father from taking the children's depositions in this case, we conclude that the Trial Court erred when it quashed the notices of deposition and subpoenas.

■ Having concluded that the Trial Court erred when it prohibited Father from deposing the children, the issue then becomes whether this error constitutes reversible error. Even though Father was prohibited from formally deposing the children, there is no doubt that he had ready access to the children and was able to and did ascertain with whom they wanted to

---

1. We note that Father wanted to take the children's depositions because he intended to call them as witnesses at trial. We further note that the Trial Court indicated, in accordance with Tenn.Code Ann. § 36–6–106(a)(7), that it would allow the children to be witnesses at trial. Therefore, based on the clear language of Tenn. R. Civ. P. 30.01, Father could compel their attendance at a deposition by subpoena.

live, whether they wanted to attend private school, etc. More importantly, the Trial Court allowed the children to testify at trial and explain where they wanted to live and where they wanted to go to school, etc. In fact, the children's trial testimony was favorable to Father. Father has been unable to demonstrate how his case actually was prejudiced in any way by the Trial Court's refusal to allow him to depose the children. Therefore, we conclude that, while the Trial Court erred in prohibiting Father from deposing the children, such error was harmless.

■■■ The next issue is whether the Trial Court erred when it refused to appoint a guardian ad litem on the children's behalf. We note that it was Mother who filed the motion requesting that a guardian ad litem be appointed, and Father opposed that motion. It is an unusual case indeed when a party wins a motion and then claims on appeal that his success was error. Tenn. R.App. P. 36(a) provides, in part, that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Assuming, without deciding, that it was error for the Trial Court not to appoint a guardian ad litem, it was Father's actions which resulted in that error. In addition, it is not appropriate for Father to take entirely inconsistent positions at the trial court level and then on appeal. Even more important, however, is the fact that Father has failed to establish any prejudicial effect of the Trial Court's refusal to appoint a guardian ad litem. Therefore, we conclude that this issue is without merit.

■■■ Finally, we address Father's claim that the Trial Court erred when it found that there was no material change in circumstances. Existing custody arrangements are favored since children thrive in stable environments. *Aaby v. Strange,* 924 S.W.2d 623, 627 (Tenn.1996); *Hoalcraft v. Smithson,* 19 S.W.3d 822, 828 (Tenn.Ct.App.1999). A custody decision, once made and implemented, is considered res judicata upon the facts in existence or those which were reasonably foreseeable when the decision was made. *Steen v. Steen,* 61 S.W.3d 324, 327 (Tenn.Ct.App. 2001). However, our Supreme Court has held that a trial court may modify an award of child custody "when both a material change of circumstances has occurred and a change of custody is in the child's best interests." *See Kendrick v. Shoemake,* 90 S.W.3d 566, 568 (Tenn.2002). According to the *Kendrick* Court:

> As explained in *Blair [v. Badenhope,* 77 S.W.3d 137 (Tenn.2002)], the "threshold issue" is whether a material change in circumstances has occurred after the initial custody determination. *Id.* at 150. While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "*has occurred after the entry of the order sought to be modified,*" the change "*is not one that was known or reasonably anticipated when the order was entered,*" and the change "is one that affects the child's well-being in a meaningful way." *Id.* (citations omitted and emphasis added).

*Kendrick,* 90 S.W.3d at 570. *See also* Tenn.Code Ann. § 36–6–101(a)(2)(B) discussed later in this Opinion.

■■■ The *Kendrick* Court went on to explain that if a material change in circumstances has been proven, "it must then be determined whether the modification is in the child's best interests ... according to

the factors enumerated in Tennessee Code Annotated section 36–6–106." *Kendrick*, 90 S.W.3d at 570. It necessarily follows that if no material change in circumstances has been proven, the trial court "is not required to make a best interests determination and must deny the request for a change of custody." *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn.Ct.App.1999).

█ The order which Father seeks to modify is the January 9, 2006, order entered following resolution of Father's first petition to change custody. Father thus needs to establish that a material change in circumstances has occurred and that the change of circumstance "has occurred after the entry of the order sought to be modified," and the change "is not one that was known or reasonably anticipated" when the January 9, 2006, order was entered. *See Kendrick*, 90 S.W.3d at 570.

█ On appeal, Father claims that there were two material changes that occurred after entry of the January 9, 2006, order. First, he claims that the children actually were accepted to the private schools. The second changed circumstance alleged by Father is Mother's "refusal to even talk about private schools."

Father admitted that one primary reason precipitating the first petition was the likelihood that the children were going to be admitted to the private schools. The only difference when the second petition was filed was that the children actually had been admitted to those schools. Clearly, when Father filed the first petition, it was either known or, at a minimum, it was "reasonably anticipated" that the children later would be admitted to the private schools. It would be fair to assume that Father would not have filed the first petition if it was reasonably anticipated that the children would not be admitted. Accordingly, we conclude that the evidence does not preponderate against

the Trial Court's finding and conclusion that the children's actual admission to private schools was not a material change of circumstance that occurred after entry of the January 9, 2006, order.

The next claimed change is Mother's alleged "refusal to even talk about private schools." Father makes this assertion without any citations to the record. Even more importantly, however, Father cites us to nowhere in the record showing that Mother's claimed refusal to discuss private schools was a change that occurred after entry of the January 2006 order. In other words, Father fails to establish that prior to the January 2006 order, Mother was amenable to discussing the children attending private school in Nashville. In fact, our review of the record establishes the exact opposite. When asked at trial if "things happen[ed] prior to January the 9th which led you to believe that there was no use talking to the mother about [the children not being challenged at their current school and wanting to go to private school]," Father responded "Yes." Therefore, even *if* Mother's refusal to discuss the children attending private school in Nashville is a basis upon which to change custody, Father has not established that this was an actual "change" that occurred after entry of the January 2006 order. The evidence does not preponderate against the Trial Court's finding and conclusion that Mother's claimed refusal to discuss the children attending private school was not a material change in circumstance that occurred after the January 2006 order.

█ As mentioned previously, the Trial Court determined that the only changed circumstance was the son's stated preference to attend school in Nashville. However, given Father's testimony set forth previously that the first petition was filed

because both children "had expressed a desire to attend private school and to come live with me [in Nashville]," it certainly would seem that the son's stated preference never changed from the time the initial petition was filed. Nevertheless, even assuming that the Trial Court was correct that the son's stated preference was a changed circumstance, when considering the record as a whole as well as the circumstances that were deemed not to be changes, we conclude that the evidence does not preponderate against the Trial Court's finding and conclusion that the son's stated preference, standing alone, was insufficient to constitute a material change of circumstance.

Father makes one final argument which involves the interrelationship between Tenn.Code Ann. § 36–6–101(a)(2)(B) and § 36–6–101(a)(2)(C). In pertinent part, these statutes provide:

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child. . . .

> (C) If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm

to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

■ Father argues that because a change of primary residential parent status necessarily involves entry of a new parenting plan and thus a new "residential parenting schedule," then the lower threshold in Tenn.Code Ann. § 36–6–101(a)(2)(C) should apply. We recently discussed the interplay between these pertinent statutes in *Massey–Holt v. Holt,* 255 S.W.3d 603 (Tenn.Ct.App., 2007), *perm. app. denied April 14, 2008.* In concluding that the trial court in that case erred when it applied the wrong legal standard, this Court observed:

> The trial court in the instant case abused its discretion by misapplying Tennessee law with regard to modifications of child custody decrees. The statute governing such decrees makes clear that a "change in circumstance" with regard to the parenting schedule is a distinct concept from a "change in circumstance" with regard to the identity of the primary residential parent. . . . [The] statutory scheme [in Tenn.Code Ann. § 36–6–101(a)(2)(B–C) ] is the result of a 2004 amendment. . . . As we explained earlier this year,

>> [a]s a result of the 2004 amendment, Tennessee now has a different set of criteria for determining whether a material change of circumstance has occurred to justify a modification of a

"residential parenting schedule" and the specifics of such a schedule. The amendment, specifically the addition of subsection (a)(2)(C), establishes different criteria and a lower threshold for modification of a residential parenting schedule. However, the statutory criteria pertaining to a modification of "custody"—the term used in the statute, which we equate to the designation of "primary residential parent" and matters more substantive than a change of schedule—remain unchanged.

*Scofield v. Scofield,* No. M2006–00350–COA–R3–CV, 2007 WL 624351, at *3 (Tenn. Ct.App. M.S., filed February 28, 2007) (citations omitted).

*Massey–Holt,* 255 S.W.3d at 608. Accordingly, because Father's petition seeks a change of primary residential parent status, i.e., a change of "custody," we conclude that the lower threshold contained in Tenn.Code Ann. § 36–6–101(a)(2)(C) simply does not apply.

■ The only issue raised by Mother is her claim that she should be awarded attorney fees incurred on appeal. Mother seeks attorney fees pursuant to Tenn.Code Ann. § 36–5–103(c). This statute provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before

whom such action or proceeding is pending, in the discretion of such court.

■ Tenn.Code Ann. § 36–5–103(c) applies to awards of attorney fees incurred on appeal. *See generally Shofner v. Shofner,* 181 S.W.3d 703, 719 (Tenn.Ct.App. 2004)("Tenn.Code Ann. § 36–5–103(c) (Supp.2004) vests in this court the discretionary authority to award these fees and costs in proper cases."). Exercising our discretion, we conclude that Mother is entitled to an award of attorney fees incurred on appeal. We remand this case to the Trial Court to determine the appropriate amount of attorney fees to which Mother is entitled.

### *Conclusion*

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed to the Appellant, David C. Pippin, and his surety.