# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
December 14, 2010 Session

## JUDITH ANNE SHAW v. JASON PATRICK SHAW

**Appeal from the Circuit Court for Hamilton County**
**No. 10-D-126      Jacqueline E. Bolton, Judge**

**No. E2010-01070-COA-R10-CV - FILED JANUARY 20, 2011**

In this divorce case, we granted the request of Jason Patrick Shaw ("Father") for a Tenn. R. App. P. 10 extraordinary appeal on three issues: (1) whether the Trial Court erred when it refused to grant his request for access to his older daughter's counseling records with a licensed clinical social worker; (2) whether the Trial Court properly prohibited Father from taking this daughter's deposition, and (3) whether the Trial Court erred when it refused Father visitation with any of the parties' three children. As to the first issue, we remand this case to the Trial Court for a determination of whether furnishing the social worker's records would be against the daughter's best interest, as discussed more fully in this Opinion. We vacate the Trial Court's refusal to allow Father to depose the daughter. Finally, we vacate the Trial Court's refusal to allow Father any meaningful visitation and remand for the Trial Court to determine an appropriate supervised visitation schedule.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
### Circuit Court Vacated; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Selma Cash Paty, Chattanooga, Tennessee, for the Appellant, Jason Patrick Shaw.

Glenna M. Ramer, Chattanooga, Tennessee, for the Appellee, Judith Anne Shaw.

# OPINION

## Background

The record in this Tenn. R. App. P. 10 extraordinary appeal begins with a complaint for divorce filed by Judith Anne Shaw ("Mother") in January 2010. The parties have three children; two daughters who currently are ages eight and twelve, and a five year old son. Mother sought a divorce from Father on the ground of inappropriate marital conduct. Mother also requested an equitable division of the marital property and that she be designated the children's primary residential parent.

In the complaint, Mother also sought entry of an order of protection and filed an affidavit in support thereof. According to Mother's affidavit:

> In August of 2009, our oldest Child made allegations of sexual abuse against my husband. The incidents were investigated by Child Protective Services, but because of the inconclusive nature of the allegations, no charges were pressed against my husband.
>
> Last weekend, I discovered cameras hidden in my bathroom and the bathroom used by our oldest Child. I called the police. When the police arrived, they removed the cameras and discovered that the cameras were attached to a laptop computer hidden in our attic.
>
> The matter is now under serious investigation. . . . (original paragraph numbering omitted)

Based on the contents of Mother's affidavit, the Trial Court entered a restraining order prohibiting Father from coming about the parties' children or the residence where the children were residing.

Father responded to the complaint, denied any wrongdoing, and filed a counterclaim for divorce. In the counterclaim, Husband alleged that it was Mother who had engaged in inappropriate marital conduct. Alternatively, Father alleged that irreconcilable differences had arisen between the parties. Father sought joint custody of the children and equal co-parenting time.

-2-

In March 2010, Father filed a motion seeking entry of a court order allowing him access to the records of all heath care providers for Mother and the parties' older daughter ("Daughter"), the child whom Father allegedly molested. According to this motion, a release signed by Father was sent to Daughter's therapist, Laura Hubone, M.A., L.C.S.W., ("Hubone"), but Hubone refused to release any records pursuant to specific instructions by Mother's attorney.

A hearing was conducted concerning whether Father should receive any co-parenting time with the children while the divorce action was pending. At the hearing, Father admitted that he had placed cameras in both Mother's and the children's bathrooms sometime after he moved out of the marital residence. Mother testified that she notified the police after she discovered the cameras. The police confiscated the two cameras as well as the computer at least one of the cameras was connected to through wiring. The computer was found in the attic. Father claimed that he installed the cameras because many times when he would call to speak with the children at night, he was told by Mother that they already were in bed. Father claimed he installed the cameras so he would know when the children were getting ready for bed and could determine if Mother was being truthful.

It also was established at the hearing that while the police investigation regarding the cameras was ongoing, at the time of the hearing, no criminal charges had been brought against Father based either on Daughter's allegations of sexual abuse or the fact that Father had placed two hidden cameras in the home. At the hearing, Mother stated that she has a good relationship with Father's mother and stepfather and acknowledged that she believed the children were safe when they were spending time with them.

Following the hearing, the Trial Court made the following ruling from the bench:

> The Court finds it's in the best interest of the children that the Court not allow visitation either supervised or unsupervised based upon the proof that I've heard here today. I want to await the outcome of this TBI investigation and the sheriff's investigation before I allow anything further. However, [Father] can call the two younger children three times a week for no longer than 30 minutes . . . .

An order was entered by the Trial Court reflecting the above ruling.

A hearing also was conducted regarding Father's request for access to Mother's and Daughter's medical and psychological records. At this hearing, Father made an oral

motion seeking permission to take Daughter's deposition. Following the hearing, the Trial Court entered an order granting Father access to all the requested records except Daughter's psychological and counseling records and denying his request to take Daughter's deposition. According to this Order:

> Based on the testimony heard on March 8, 2010, the waiver of [Mother's] privilege by her attorney and argument of counsel, the Court finds said motion is well taken as [to] medical records for both [Mother and Daughter]. However, as to the psychological, psychiatric and counseling records, [Father] shall be permitted to secure those records for [Mother], but not for [Daughter], who has an independent right of privacy not to release those records.
>
> The Court grants [Father's] motion for medical records only for [Daughter] . . . . That portion of the motion to secure the psychological and counseling records for [Daughter] is denied.
>
> Further, [Father's] oral motion to depose [Daughter] is denied.
>
> Defendant's oral motion for [a Tenn. R. App. P. 9] interlocutory appeal on the issues of [Father's] securing the psychological, psychiatric and counseling [records of Daughter] and to take the child's deposition is denied. . . .

After the above quoted order was entered, the Trial Court appointed a Guardian ad Litem on the children's behalf. One of the specific responsibilities the Trial Court granted to the guardian was to "review the medical and psychological records of the above-named minor children and to release the records to counsel for the parties if in the guardian's opinion it is appropriate to do so."

Because the Trial Court denied Father's request for a Tenn. R. App. P. 9 interlocutory appeal, Father filed with this Court a Tenn. R. App. P. 10 request for an interlocutory appeal. After Mother responded to the request, we granted Father's request for permission to appeal on the following three issues:

> 1.      Did the Court err in denying Father access to the psychological, psychiatric and counseling records, including but

-4-

not limited to the records of Laura Hubone, the clinical social worker counseling with [Daughter]?

      2.      Did the Court err in denying Father permission to depose [Daughter]?

      3.      Did the Court err in denying Father even supervised visitation with his children and limiting Father to three phone calls a week?

## Discussion

Our review is de novo upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn.2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Mother claims Hubone's records are privileged communications that must not be disclosed to Father. More specifically, Mother relies on the provisions of Tenn. Code Ann. § 63-23-109 (2010), which provides as follows:

> **Privileged communications.** – (a) The confidential relations and communications between a client and licensed social worker as defined in this chapter, are placed upon the same basis as those provided by law between licensed psychologists, licensed psychological examiners, licensed senior psychological examiners, certified psychological assistants and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.
>
> (b) Nothing contained in this section shall be construed to prevent disclosure of confidential communications in proceedings arising under title 37, chapter 1, part 4, concerning mandatory child abuse reports.

In turn, Tenn. Code Ann. § 63-11-213 (2010) provides that communications between a client and psychologist are to be afforded the same protection as communications between an attorney and client. The statute provides:

**Privileged communications.** – For the purpose of this chapter, the confidential relations and communications between licensed psychologist[,] or . . . psychological examiner[,] or . . . senior psychological examiner or certified psychological assistant and client are placed upon the same basis as those provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.

Reading the above two statutes in tandem, it is clear that Hubone's records should be treated as confidential in the same manner as a communication between an attorney and client. This, however, does not mean that the privilege cannot be waived or that Father is not entitled to them.

We conclude that the statute governing whether Father is entitled to Hubone's records is Tenn. Code Ann. § 36-6-110 (2010) which provides, in relevant part:

**Rights of non-custodial parents.** – (a) Except when the juvenile court or other appropriate court finds it not to be in the best interests of the affected child, upon petition by a non-custodial, biological parent for whom parental rights have not been terminated, the court shall grant the following parental rights:

\* \* \*

(5) The right to receive copies of the child's medical records directly from the child's doctor *or other health care provider*, upon written request that contains a current mailing address and upon payment of reasonable costs of duplication. . . .

(b) Any of the foregoing rights may be denied in whole or in part by the court upon a showing that such denial is in the best interests of the child.

The obvious intent of the foregoing statute is to ensure that the non-custodial parent is able to obtain relevant documentation and information from his or her child's health care providers. In other words, the custodial parent cannot intentionally thwart the non-custodial parent from obtaining this important and necessary information. There is nothing

in the statute to suggest that the General Assembly intended for the non-custodial parent's rights to be any different simply because the health care provider is providing psychological care to the child. Therefore, we conclude that the term "other health care provider" should be read broadly enough to encompass records from a psychologist or licensed clinical social worker, etc. *Cf.* Tenn. Code Ann. § 34-6-201 (2007) (defining "health care" for purposes of a durable power of attorney for health care purposes as meaning "any care, treatment, service or procedure to maintain, diagnose or treat an individual's physical *or mental condition* . . . ."); Tenn. Code Ann. § 56-7-3301 (Supp. 2010) (addressing insurance contracts with health care providers and defining "health care provider" to include any person performing services regulated pursuant by Title 63, which would include social workers as they are regulated by Title 63, Section 23).

Having concluded that Hubone's records are covered by the provisions of Tenn. Code Ann. § 36-6-110, the next issue is whether the furnishing of these records would not be in Daughter's best interest. On appeal, Mother argues that Daughter expected any communication with Hubone to be confidential and, therefore, furnishing these records to Father would result in a breach of this confidential relationship. If we were to accept this argument, then no parents (including Mother) ever would be able to obtain their child's records from a psychologist or licensed clinical social worker, a patently absurd result.[1] We conclude that a child's perceived loss of a confidential relationship with a therapist, standing alone, is insufficient to make the furnishing of such records to a parent, including a non-custodial parent, against a child's best interest. We again strongly emphasize that based on the record before us, there have been no criminal charges ever filed against Father. Unless and until that happens, Father is on the exact same footing as Mother with respect to being entitled to his child's counseling records. If Father is found guilty of abusive conduct, then our conclusion certainly could change. *See* Tenn. Op. Att'y. Gen. No. 09-95 (May 22, 2009).[2]

---

[1] The record on appeal is unclear as to whether Mother already has obtained Hubone's records. We assume Mother is not claiming that she is not entitled to the records, but rather is arguing that it is only Father who is not. Our ultimate conclusion would not change even if Mother has not obtained copies of the records.

[2] Tennessee Attorney General Opinion No. 09-95 provides that:

> Though the statutes do not contain language specifically prohibiting a parent who has committed abuse from obtaining their children's medical records, it is likely that such a restriction will be in the child's best interest. Title 36, Chapter 6, currently recognizes that abuse committed by a parent will create a rebuttable presumption that custody with that parent is not in the child's best interest. *See* Tenn. Code Ann. § 36-6-101(4). Thus, insofar

(continued...)

-7-

In summary, we find that the clear intent of Tenn. Code Ann. § 36-6-110 (2010) is to make any and all medical and other health care records available to both of a child's parents, including records generated by licensed clinical social workers and psychologists. Thus, while these records certainly are privileged, that privilege can be waived by either parent, unless to do so would not be in the child's best interest. In the absence of a finding of abuse, a finding that it is in the child's best interest not to disclose the records to a non-custodial parent will be a difficult hurdle to overcome. The statute as enacted by our General Assembly requires Father be furnished the Child's requested medical records unless the Trial Court, not the Guardian ad Litem, determines that a denial of Father's request to obtain these records is in the best interest of the Child. On remand, the Trial Court is instructed to determine, consistent with this Opinion, if furnishing the records to Father would not be in Daughter's best interest.

We next discuss whether the Trial Court properly denied Father's request to take Daughter's deposition. There is some disagreement between the parties as to the scope of the Trial Court's denial of the request. At one point the Trial Court did state that it was denying Father's request to depose Daughter "until the appeal is over." That qualification, however, is not in the order which seems to deny altogether the request with no qualifications.

In *Pippin v. Pippin*, 277 S.W.3d 398 (Tenn. Ct. App. 2008), the trial court denied a father's request to depose his children. As in the present case, the trial court in Pippin gave no explanation as to why the request was being denied. We stated in *Pippin*:

> We first discuss whether the Trial Court erred when it prohibited Father from taking the children's depositions. At the outset, we note that the Trial Court did not explain why it was quashing the notices of deposition. There is nothing in the record to indicate that the children were not competent to be witnesses. Their ages, standing alone, are not a sufficient basis to conclude they were not competent. *See, e.g., State v.*

---

[2](...continued)
as the statutes permit a court to prohibit the release of a child's medical records after making a determination of the child's best interests, the statutes do provide a means by which the child's medical records can be protected from parents who have committed the types of abuse defined in Tenn. Code Ann. §§ 39-15-401, 39-15-402, or child sexual abuse as defined in Tenn. Code Ann. § 37-1-602(a)(3).

We emphasize that in the present case, there has been no finding that Father committed sexual abuse.

*Caughron*, 855 S.W.2d 526, 537-538 (Tenn. 1993) ("Under T.R.E. 601 . . . no one is automatically barred from testifying simply because of age or mental status. So long as a witness is of sufficient capacity to understand the obligation of an oath or affirmation, and some rule or statute does not provide otherwise, the witness is competent.") (footnote omitted).

Tenn. R. Civ. P. 30.01 provides that "[a]fter commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination. . . . The attendance of witnesses may be compelled by subpoena as provided in Rule 45." Tenn. R. Civ. P. 45.07 allows a trial court to quash a subpoena if it is "unreasonable and oppressive." There is nothing in the record to support a conclusion that the subpoenas in the present case were unreasonable or oppressive. Because we do not know why the Trial Court quashed the notices of deposition and subpoenas, and because we are unable to discern from the record any sufficient basis for the Trial Court to prohibit Father from taking the children's depositions in this case, we conclude that the Trial Court erred when it quashed the notices of deposition and subpoenas.

*Pippin*, 277 S.W.3d at 403 (footnote omitted).

In the present case, the Trial Court gave no explanation as to why it denied Father's request to depose Daughter. There is nothing in the record to support an allegation that Father subpoenaed Daughter and that the subpoena was unreasonable or oppressive. Likewise, there is nothing in the record to indicate that Daughter did not or could not understand the obligation of an oath or otherwise was not competent. Accordingly, the Trial Court's judgment denying Father's request to depose Daughter is vacated and, on remand, Father shall be permitted to depose Daughter consistent with the provisions of the Rules of Civil Procedure.

The final issue is whether the Trial Court erred when it denied Father any meaningful visitation with his children while this divorce action was pending. In *Keisling v. Keisling*, 92 S.W.3d 374 (Tenn. 2002), the Supreme Court acknowledged that parent's have a private interest in the custody of their children. In addition:

Parents have a fundamental constitutional interest in the care
and custody of their children under both the United States and
Tennessee constitutions. *See Stanley v. Illinois*, 405 U.S. 645,
651-52, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Tenn. Baptist
Children's Homes, Inc. v. Swanson* (*In re Swanson*), 2 S.W.3d
180, 187 (Tenn. 1999); *Nale v. Robertson*, 871 S.W.2d 674, 678
(Tenn. 1994); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn.
1993). This Court has recognized for over a century that a
"parent is entitled to the custody, companionship, and care of the
child, and should not be deprived thereof except by due process
of law." *State ex rel. Bethell v. Kilvington*, 100 Tenn. 227, 45
S.W. 433, 435 (1898). *Accord Nash-Putnam v. McCloud*, 921
S.W.2d 170, 174 (Tenn. 1996); *Bond v. McKenzie* (*In re
Adoption of Female Child*), 896 S.W.2d 546, 547 (Tenn. 1995).

*Keisling*, 92 S.W.3d at 378.

In *Smith v. Dorsett*, No. E2009-00296-COA-R3-CV, 2010 WL 377043 (Tenn.
Ct. App. Feb. 4, 2010), the trial court completely terminated a father's co-parenting time with
his children based on allegations of physical and verbal abuse. We vacated that order stating
as follows:

We agree with Father that the January 30, 2009 order
effectively terminates Father's parental rights without his having
been given the protections afforded a parent in a parental
termination action. While we agree with the Trial Court that the
incident wherein Father engaged in abusive behavior was wholly
inappropriate, the evidence in the record on appeal is simply
insufficient, even if the proper statutorily mandated steps had
been taken, to terminate Father's parental rights. . . .

The Trial Court noted that Father had undergone anger
management counseling. The Trial Court further found that
"[t]he children have received counseling. As a result, their
emotional health appears to be good." The children stated their
preference that they do not want to visit with Father, and Mother
asserted that when the children see Father "[t]hey just get really
uptight and worried about it, upset. Sometimes they'll squabble
amongst themselves for a day or two before we have to go to

court. And they just get anxious about it." However, other than the children's stated preferences and Mother's vague assertions that visitation would harm the children, the record is devoid of evidence which would tend to show that supervised visitation between Father and the children would be inappropriate or against the best interest of the children.

We believe the record shows that it is in the children's best interest to allow Father . . . appropriately supervised visitation . . . . We remind Mother that as the primary residential parent she has an obligation "to facilitate and encourage a close and continuing parent-child relationship between the [children] and [Father], consistent with the best interest of the [children]." Tenn. Code Ann. § 36-6-106(a)(10) (2005).

We vacate that portion of the January 30, 2009 order suspending all of Father's co-parenting time, and remand this case to the Trial Court to establish a suitable schedule of supervised visitation between Father and the three minor children. . . .

*Smith*, 2010 WL 377043, at *3.

We reach the same result in the present case. At the present time, the allegations of sexual abuse have not been substantiated. Although no criminal charges have been brought against Father with respect to the cameras, their installation alone is, at the least, very troubling, especially when considering where they were placed.

Based on Father's admitted inappropriate conduct with respect to the cameras, we believe that while it is in the children's best interest that visitation with Father be resumed immediately, such visitation should be supervised at this time. Fortunately, Mother appears to have a strong and positive relationship with Father's mother and step-father. Accordingly, on remand the Trial Court is to establish a suitable schedule of supervised visitation between Father and all three children, with this visitation to be supervised at all times by Father's mother.[3] In the event that Father's mother is incapable or unwilling to supervise the

---

[3] Our decision on this interlocutory appeal is based solely upon the record presented to us at the time of this interlocutory appeal. Ultimately, it will be the obligation of the Trial Court to make the final custody and visitation determinations based upon all the evidence presented to it prior to entry of the Trial Court's

(continued...)

children's visitation with Father, then the Trial Court is to develop a supervised visitation schedule with a different third party. The judgment of the Trial Court eliminating Father's meaningful co-parenting time is vacated.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Circuit Court for Hamilton County for further proceedings consistent with this Opinion. Costs on appeal are taxed to the Appellee, Judith Anne Shaw, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE

[3](...continued)
final judgment.