FILED

02/28/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2018 Session

**MICHAEL JON ECKLEY v. MARGIT ECKLEY**

**Appeal from the Circuit Court for Montgomery County**
**No. C-2015-CV-891        Ross H. Hicks, Judge**

———————————————————

**No. M2016-02236-COA-R3-CV**

———————————————————

In this appeal arising from a divorce, the trial court adopted a permanent parenting plan for the parties' two minor children that named the father the primary residential parent for one child and the mother the primary residential parent for the other.  The court also awarded Mother alimony in futuro after finding her to be relatively economically disadvantaged and that rehabilitation was not feasible.  On appeal, the father challenges both the permanent parenting plan and the alimony award.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Mark R. Olson, Clarksville, Tennessee, for the appellant, Michael Jon Eckley.

Daniel P. Bryant, Clarksville, Tennessee, for the appellee, Margit Eckley.

**OPINION**

**I.**

On April 30, 2015, in the Circuit Court for Montgomery County, Tennessee, Michael Jon Eckley ("Father") filed for divorce from his wife of nearly 24 years, Margit Eckley ("Mother").  During that time, the union produced three children, only two of whom were minors at the time of the divorce.  As grounds for divorce, Father claimed both irreconcilable differences and inappropriate marital conduct.  Mother answered and counterclaimed for divorce, citing the same grounds.

Through mediation, the parties resolved many of their issues. They stipulated to the divorce, *see* Tenn. Code Ann. § 36-4-129 (2017), and agreed to a division of the great majority of the marital property and the marital debt. But significant disagreements remained.

Among other things, Father and Mother could not reach an agreement regarding child support, alimony, or a permanent parenting plan. A few interrelated obstacles hampered agreement on these issues. Although the parties stipulated to Father's gross monthly income and the share of Father's retirement pay to which Mother was entitled, they differed over imputing income to Mother. As for the permanent parenting plan, the parties agreed generally on parenting time and schedule for the primary residential parent and non-primary residential parent. But Father and Mother differed on who should be designated the primary residential parent.

The trial court conducted a one-day trial relative to the unresolved issues. It heard brief testimony from an employee of Tennessee Department of Children's Services (the "Department") regarding the Department's involvement with the parties' middle child ("Middle Child").[1] The only other testimony came from Father and Mother.

Pertinent to this appeal, the court's final decree adopted a permanent parenting plan that named Father the primary residential parent of Middle Child and named Mother the primary residential parent of the youngest child ("Youngest Child"). In the case of each child, the court granted the primary residential parent 280 days of parenting time and the other parent 85 days. The schedule ordered by the court largely matched that agreed to by the parties in mediation.

The court also determined an award of alimony to Mother was appropriate. After considering the relevant statutory factors, the court awarded alimony in futuro in the amount of $1,000 per month.

## II.

On appeal, Father raises two issues. First, he argues that that the appropriate permanent parenting plan and schedule for the Youngest Child was not adopted. Second, he argues that Mother should not have been awarded alimony. In considering both issues, because this is a non-jury case, our review is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Our review of the trial court's conclusions of law is de novo with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

---

[1] The Department closed its investigation after two months, determining that an allegation of medical maltreatment was unsubstantiated.

## A.

In divorce cases involving minor children, "the court may . . . award the care, custody and control of such . . . children to either of the parties to the suit or to both parties in the instance of . . . shared parenting . . . as the welfare and interest of the . . . children may demand." Tenn. Code Ann. § 36-6-101(a)(1) (2017). And the final divorce decree must include a permanent parenting plan, *id.* § 36-6-404(a) (2017), the "plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a residential schedule." *Id.* § 36-6-402(3) (2017).

Father directs his argument only to the parenting plan for Youngest Child. Middle Child reached the age of majority within six months after the entry of the final decree of divorce, but both parents anticipated Middle Child would have a need for continuing support as a result of her autism spectrum disorder. Father's complaint with the parenting plan appears to be primarily with the trial court's designation of Mother as the primary residential parent for Youngest Child. *See id.* § 36-6-402(4) ("'Primary residential parent' means the parent with whom the child resides more than fifty percent (50%) of the time."). But he also requests "equal residential time" with Youngest Child, suggesting that his argument is not limited to the primary residential parent designation.

Both the primary residential parent designation and the parenting schedule are driven by the child's best interest. *See id.* §§ 36-6-106(a), -404(b) (2017) (requiring custody determination and parenting plan to be in the best interest of child); *Armbrister*, 414 S.W.3d at 693. Courts must fashion a residential schedule "consistent with the child's developmental level and the family's social and economic circumstances, which encourage[s] each parent to maintain a loving, stable, and nurturing relationship with the child." Tenn. Code Ann. § 36-6-404(b). Unless certain limiting factors found in Tennessee Code Annotated § 36-6-406 are "dispositive of the child's residential schedule," which are not applicable here, the court determines the schedule on the basis of the child's best interest, relying on a non-exclusive list of factors found at Tennessee Code Annotated § 36-6-106(a). *Id.*

The determination of a child's best interest presents a question of fact. *Armbrister*, 414 S.W.3d at 692-93; *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, we "presume that a trial court's factual findings on [best interest] are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Armbrister*, 414 S.W.3d at 693. In weighing the preponderance of the evidence, findings of fact based on witness credibility are given great weight, and we will not overturn such findings absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007).

3

The details of parenting plans lie within the trial court's discretion. *See Armbrister*, 414 S.W.3d at 693. A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). With discretionary decisions, our review is "less rigorous," and there is "a decreased likelihood that the decision will be reversed on appeal." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Father takes issue with the trial court's assessment of the evidence. In fashioning the parenting plan for Youngest Child and naming Mother as the primary residential parent, the court determined that each of the following statutory factors favored Mother:

> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
>
> . . . .
>
> (5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
> (6) The love, affection, and emotional ties existing between each parent and the child;
> (7) The emotional needs and developmental level of the child;
>
> . . . .
>
> (9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;
> (10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
> (11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings . . . .

Tenn. Code Ann. § 36-6-106(a)(1), (5), (6), (7), (9), (10), & (11).

Father submits that a proper assessment of the evidence would have led to a determination that a majority of the statutory factors considered by the court favored him instead of Mother. Specifically, Father points to factors (1), (5), (7), (9), (10), and (11)

4

above. He claims that he was the "primary person to provide the day-to-day functions of keeping the children" and that he "buys the children's clothes" and performed "the majority of the cleaning and cooking." Father also claims that Youngest Child lived "in a stable satisfactory environment" and that he was "the primary party responsible for providing for the physical and emotional comforts of the children." He submits that the Department's involvement with the family demonstrated Mother's potential "to lose control and cause damage to the children." Finally, Father states that the decision to designate different primary residential parents "adversely [impacted] the continuity of [Youngest Child's] life[] and[] separate[d] the children one from the other and from the life they have known."

We find no error in the trial court's consideration of the statutory factors. Father's arguments ignore or overlook several factual findings made by the court, which the evidence does not preponderate against. While Father may have performed a majority of the cooking and purchased clothing because he earned the income for the family, Mother had been at home with the children since the birth of Middle Child. During a significant portion of the marriage, Father was on active duty in the military and away from home on deployment. Perhaps more importantly, due to the marital discord, Mother and Youngest Child had been sharing a room in the home for over a year. The oldest child chose to live with Father, but both Father and Mother acknowledged that Father better dealt with Middle Child's development disorder and emotional issues, one child's best interests may differ from another child's best interest.

Contrary to Father's claim, the testimony offered by the employee of the Department would not support a finding that Mother either lost control or caused damage to the children. In fact, the employee testified that her supervisor and last caseworker concluded that Mother "was providing, you know, the appropriate treatment that [Middle Child] needed to help with . . . [the] problems that she was having."

Finally, with respect to the impact of naming Father the primary residential parent of Middle Child and Mother the primary residential parent of Youngest Child, the court's memorandum opinion provides as follows:

> Although it would ordinarily be desirable to keep these children together, there was testimony that [Middle Child's] emotional outbursts and aggressiveness have sometimes been directed at [Youngest Child] and [oldest child]. Both parties indicated that while the children need to be together, they also need to be apart. In this case the Court finds that a split custody arrangement and a split primary residential parent designation together with time when both children can be with each parent and with their older [sibling] . . . is appropriate and in the best interest of all concerned.

The evidence does not preponderate against the court's factual findings. Both parties testified about Middle Child's outbursts and claimed that it was hard to control her during these outbursts. Mother stated that Middle Child tended to lash out at her sisters. Mother explained that she would restrain Middle Child to keep her from hurting herself or attacking Youngest Child. According to Mother, Middle Child tended to "get[] physical" and "let it out on [Youngest Child]." Mother found this particularly worrisome because of the nearly eight-year age difference between the two children.

In sum, the trial court did not abuse its discretion in fashioning the permanent parenting plan for Youngest Child. The court properly considered the applicable best interest statutory factors. In doing so, it is apparent that the court credited Mother's testimony regarding her role in caring for the children and on the need for some separation of the siblings. We accord those findings great weight.

B.

Father's second argument relates to spousal support. Trial courts possess "broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski*, 350 S.W.3d at 105. In exercising that discretion, the court must consider a non-exclusive list of statutory factors found in Tennessee Code Annotated § 36-5-121(i) (2017).[2]

---

[2] The relevant factors include:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker

6

Here, after considering the applicable factors, the trial court awarded Mother alimony in futuro, which is "intended to provide support on a long-term basis until the death or remarriage of the recipient." *Id.* at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)). Although not a statutorily favored form of spousal support, alimony in futuro may be awarded under the proper circumstances. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *see Gonsewski*, 350 S.W.3d at 109. Such long-term support is appropriate when one spouse is relatively economically disadvantaged and rehabilitation is not feasible. Tenn. Code Ann. § 36-5-121(f)(1). Rehabilitation is not feasible if,

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

*Id.*

Father contends that the trial court abused its discretion in awarding alimony to Mother. Rather than challenging the type of alimony awarded, Father argues that Mother had no need for spousal support, and thus, an award of alimony of any type was improper. He also argues that an examination of the statutory factors weighs against an award of alimony.

The most important considerations in determining spousal support are the "disadvantaged spouse's need and the obligor spouse's ability to pay." *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)). In making the need determination, the trial court relied on an income and expense statement for Mother. The proof showed that Mother cared for the children in the home and that she had only nominal income from online sales of items she acquired in yard sales. Even considering an earning capacity of $1,892.00 per month in retail sales and her share of Father's military retirement from the property division, the court found Mother "would still need approximately $1,000.00 per month."

---

contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

7

With respect to his ability to pay support, Father acknowledges "a disparity" between his income and Mother's. The parties stipulated that Father's monthly income was $10,040. The income included disability compensation of $3,185.80 from the United States Department of Veterans Administration and military retirement pay of $2,307.00. Since his retirement from the military, Father had worked as a construction inspector, earning $4,547.20 per month. So the court found that, even considering Mother's share of Father's military retirement under the property settlement, Father's monthly income was $9,140.27.

Father complains that Mother has the education and training to obtain work. But Mother, who is a German citizen with lawful permanent resident status in the United States, testified that she only has the German equivalent of a high school education, which amounted to nine years of schooling. At age 19, Mother received a certification in "cosmetology or hair," but she had not worked as a cosmetologist since her marriage to Father. And Father failed to offer any testimony about how a job in cosmetology might impact Mother's capacity to earn. Mother testified that training to become a cosmetologist was not something she would pursue because of the relatively low wages.

Father also points out that he has a disability and was age 49 at the time of trial while Mother had no disability and was age 45. According to Father, the VA gave him a 90% disability rating due to sleep apnea and breaking two pieces off his spine. Yet the proof established that Father still had earning capacity, notwithstanding his disability. For her part, Mother faced her own obstacles to finding work outside of the home, such as her limited formal education or training. Mother also had to find employment while managing to care for Youngest Child, who was age 9 at the time of trial.

Father claims that the division of martial property is another factor favoring the denial of alimony. In particular, Father notes that Mother received her vehicle in the divorce and that he assumed the debt on the vehicle as well as the other marital debt. Yet the parties had little in the way of personal and real property other than their vehicles and their home. They filed for bankruptcy relief several months before the trial. Although Father was assessed the marital debt in the divorce, the largest component of that debt was the mortgage on the marital residence. The court awarded Father the home, which required Mother to vacate the premises and search for another home for her and the children.

Viewing the evidence in a light most favorable to the trial court's decision, we find no abuse of discretion in the decision to award alimony in futuro. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). The evidence does not preponderate against the court's factual finding that Mother had a need of at least $1,000 per month even taking into account her capacity to earn. The evidence also does not preponderate against the finding that Father had the ability to pay support.

The court appropriately weighed the other relevant statutory factors as favoring an award of spousal support. As a result of the divorce, Mother will have to find a place to live and buy all new furniture and household necessities. Mother will be starting her new life with limited formal education and no job training, other than a twenty-five-year-old German cosmetology certificate. Mother testified that, upon inquiry, she learned that her cosmetology certificate would not be accepted in the United States. Mother will have no recent job history to aid her job search. Mother left the workforce to care for the children after the birth of Middle Child. Prior to that, her only job experience during the marriage was working for Army and Air Force Exchange Services while Father was stationed in Germany. Her only job experience in the United States was working just over a year for a daycare center prior to the birth of the parties' first child.

Father does not challenge the court's finding that Mother was relatively economically disadvantaged. And the evidence does not preponderate against that finding. As for the feasibility of rehabilitation, the court found there was "little likelihood that [Mother] can be rehabilitated given her limited education, lack of work history, her German citizenship, limited employability skills and continuing need to care for 9 year old [Youngest Child]." The evidence does not preponderate against those findings either.

## C.

Finally, Mother requests an award of her attorney's fees on appeal. By statute, courts have discretion to award a spouse designated as the primary residential parent "reasonable attorney fees incurred in enforcing any decree for alimony . . . or in regard to any suit or action concerning the adjudication of the custody . . . , of any child." Tenn. Code Ann. § 36-5-103(c) (2017). We have discretion to award attorney fees incurred on appeal. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). In exercising our discretion, we "consider, among other factors, the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the requesting party has been acting in good faith." *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004).

Exercising our discretion, we award Mother her attorney's fees incurred on appeal. The record indicates Mother has little ability to pay her own attorney's fees, and Mother prevailed on appeal.

## III.

The trial court did not abuse its discretion in fashioning the permanent parenting plan for the parties' youngest child. The court also did not abuse its discretion in awarding spousal support to Mother. So we affirm the judgment. We remand this case

for a determination of a reasonable amount of attorney's fees to be awarded Mother for defending this appeal and for further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE