FILED
11/28/2017
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 6, 2017 Session

## JULIE ANN NORMAN v. JOSHUA SHANE NORMAN

**Appeal from the Chancery Court for Wayne County**
**No. 2014-CV-5387        Stella L. Hargrove, Judge**

_____

### No. M2016-01990-COA-R3-CV
_____

A Father appeals the trial court's decision to name the Mother as Primary Residential Parent of the parties' two children. Discerning no error, we affirm the decision of the trial court, award the Mother her attorneys' fee incurred on appeal, and remand the case for a determination of the amount.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Paul D. Jeter and Barbara Fisher Henry, Nashville, Tennessee, for the appellant, Joshua Shane Norman.

Ryan P. Durham and Cameron R. Hoffmeyer, Lawrence, Tennessee, for the appellee, Julie Ann Norman.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

Joshua Shane Norman ("Father") and Julie Ann Norman ("Mother") were married on October 17, 2009, and previously resided in Waynesboro, Tennessee. They are the parents of two sons, born in May 2011 and October 2012. At some point during the marriage, Father left Waynesboro and moved to Oneida, Tennessee, to live with his parents and to recover from a shoulder surgery; the record does not show when he moved. Mother filed for divorce on April 25, 2014, and on June 19 Mother and Father entered into an Agreed Temporary Parenting Plan. The plan provided that Mother would

have responsibility for the children during the school year, with Father having parenting time every other weekend; during the months of June and July, Father was to have parenting time every other week.

On March 23, 2015, Mother was indicted by a Wayne County Grand Jury for selling a Schedule III drug to a confidential informant in a school zone. In response to Mother's arrest, Father filed an Emergency Motion to Modify Temporary Parenting Plan, requesting that the children immediately be placed in his care until further notice. The record does not include an order entered on this motion.

A final decree of divorce was entered on July 7, 2015; the decree incorporated the parties' Marital Dissolution Agreement and another Temporary Parenting Plan. This plan designated Mother as primary residential parent and gave each parent 182.5 days of residential parenting time. The plan was to be in effect until June 2016, at which point the parties were to attend mediation and agree to a permanent plan to be used during the school year. On June 3, 2016, the court entered an Agreed Order wherein the parties waived mediation and set a hearing on a permanent parenting plan for June 30. The hearing was held, and the court made findings and ruled from the bench; on August 30 the court entered an order memorializing its ruling and adopting a new parenting plan, *inter alia*, designating Mother as primary residential parent and granting her 253 days of residential parenting time and Father 112 days. Father appeals, raising the following issues:

(1) Whether the trial court erred in designating the mother as the primary residential parent?
(2) Whether the father is entitled to his reasonable attorneys' fees?

## II. STANDARD OF REVIEW

Trial courts have "broad discretion in child custody matters," *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999), including devising permanent parenting plans and designating the primary residential parent." Consequently, a trial court's decision regarding a permanent parenting plan is "'peculiarly within the broad discretion of the trial judge' and will be set aside only for an abuse of discretion." *Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013) (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). A trial court abuses its discretion when it "appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (quoting *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn. 2011)).

Under the abuse of discretion standard, the trial court's decision "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). "It is not the function of appellate courts to

"tweak [parenting plans] in the hopes of achieving a more reasonable result than the trial court." *Eldridge*, 42 S.W.3d at 88. We review the trial court's factual findings *de novo* upon the record, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We review the trial court's findings of law *de novo*, with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008).

## III. DISCUSSION

### A. Designation of Primary Residential Parent

At the hearing the court made an oral ruling, which included findings of fact; the findings and ruling were incorporated into the order under appeal:

1. The Court must start with looking at the factors of custody set forth in Tennessee Code Annotated § 36-6-106.[1]

---

[1] Tennessee Code Annotated section 36-6-106(a) states:

> In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:
>
> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;
> (3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;
> (4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;
> (5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;
> (6) The love, affection, and emotional ties existing between each parent and the child;

2. The love, affection and emotional times existing between each parent and the children. This is very strong on each side. The Court does not have an issue with that.

3. The ages of the children. The children are certainly young; Brody is 5 and Logan is 3 and a half.

4. The next factor, primary caregiver, that has been the mother by nature of the children being born here in Wayne County and living here with the father relocating there and otherwise I think the mother has been the primary caregiver of the boys. The Court recognizes that the Father has played a substantial role and wants to continue.

5. The importance of continuity and stability. With this factor, the Court will combine the stability of the family unit and third party support that is out there on each side. It is clear that the grandparents of the Mother have played a substantial role in these children's lives. The Court believes that there is an inference that the great-grandparents having control over the children with the mother's work schedule that it takes a while for the

---

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

children to get back in line and that the father has a complaint about the 3 and a half year old wearing a pull up at time[s]. The Court finds that these are two minor complaints of the father against this good mother.

6. The Court understands that Father sees the Mother as part of the criminal element in Wayne County. The Court does not. It is has been this Court's experience that you have these CI's that are trying to buy usually cocaine and methamphetamine, not Tylenol 3 and cough syrup out there and trying to make cases to help themselves. The Court finds that the criminal informants have a much worse record and past than the person they set up. He obviously knew this mother and knew she had Tylenol 3. She did wrong. Does that make her a bad mother that she's on diversion and TBI cleared her as a person with no criminal record, worthy of diversion with no violations? It does not in this Court's mind.

7. The Court finds that the Father is a good father and the Mother is a good mother.

8. The Court finds that the Father has remarried. The stability of his family unit, he's remarried less than a month and he wants to move his children with him into this setting where is family lives. The Father has family in Onieda and the Mother has family in Wayne County, where the children have lived all of their lives.

9. The Court recognizes that the children are very young, they do not have connections and friends that we see with older children. Extracurricular activities have not come into place yet. But they do have stability here and that's been provide over the five years that we are talking about with Brody's age.

10. While there is some stability on the Father's part, I think it has been proven more, simply because how things have happened over the years of these young boys' lives that there is great stability in Waynesboro and Wayne County.

11. The next factor, the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent/child relationship between the children and the other parent is not a problem in this case. The Court hopes that each parent, regardless of the ruling, will recognize that the other parent is a good parent and continue to honor that.

5

The court determined that it was in the children's best interest to remain in Wayne County and proceeded to designate Mother as primary residential parent and to establish the residential parenting schedule.

Tennessee Code Annotated section 36-6-402(5) requires a permanent parenting plan to designate a primary residential parent, defined at section 36-6-402(4) to be the parent with whom the children spend more than 50 percent of their time. The trial court correctly noted that its inquiry was guided by the factors at section 36-6-106. Father contends that the trial court erred in "[r]eviewing and weighing the factors set out in Tennessee Code Annotated 36-6-106" and argues that the evidence "clearly favored Father as the parent with which the children should primarily reside." While Father does not specifically challenge the residential parenting schedule adopted by the court, he takes issue with the court's findings and rulings with respect to the factors at section 36-6-106(a)(1), (2), (4), (5), (8), (10), (12), and (14). Accordingly, we shall consider Father's arguments as to those specific factors only with respect to the designation of Mother as primary residential parent. Our review is limited further by Father's failure to include citations to the record in support of his specific arguments as required by Rule 27(a)(7)(A) of the Tennessee Rules of Appellate Procedure and Rule 6 of the Rules of the Court of Appeals.[2]

At the outset, we note that much of Father's arguments center on his contention that the court erred in weighing a particular factor in Mother's favor or in failing to weigh the factor in his favor. Father essentially asks this court to review the trial court's decision as to the party in whose favor the factor weighs. We are mindful, however, of the significant limitations that the abuse of discretion standard places on our ability to review the factual determinations of the trial court when the evidence does not preponderate against them; we cannot substitute our judgment for that of the trial court. *See Eldridge*, 42 S.W.3d at 88.

Father first asserts that statutory factor (1) "weighed heavily in favor of Father" because Mother "failed and/or refused to notify the father of the minor children's activities and daily needs." The court, as noted, did not make a finding as to this specific factor and, upon our review of the order, the findings at paragraphs 2, 4, and 7 touch on factor (1). Father does not cite to specific testimony in the record in support of this argument, and we do not agree that the factor favored Father. Upon our review of the record, the evidence does not preponderate against the finding relating to factor (1).

With respect to factor (2), Father argues that the factor weighed more heavily in his favor. In paragraph 11 of the order, the court held that the willingness and ability of

---

[2]  While Father includes some citations to testimony in the Statement of Facts section of his brief, there are no citations in the argument section. In considering his arguments, we have reviewed the testimony cited in the Statement of Facts section.

each parent to establish a good relationship between the children and the other parent "is not a problem in this case." Father's argument, as we perceive it, is that the court failed to consider certain events that would have caused this factor to weigh in his favor. Again, Father's does not cite to the evidence upon which he relies and upon our review of the record as a whole, we find no evidence that preponderates against this finding.

As to factor (4), Father contends that the trial court found this factor to be equal among the parties; there is, however, no specific finding pertaining to this factor in the order. Father argues on appeal that "without the Mother's grandparents providing for her and the minor children she would not be able to provide the children with their daily necessities." However, Father does not cite to evidence in the record that would support this argument, and upon our review of the record, we discern no testimony or other evidence that would establish that Mother could not provide the children with necessary care.

With respect to factor (5), the trial court found in paragraph 4 that the boys had been born and raised in Wayne County, that Mother had been their primary caregiver, and that Father had relocated and "ha[d] played a substantial role and wants to continue." Father argues that "any consideration of his relocation is barred by *res judicata*" because he had moved to Onieda during the pendency of the divorce; this argument is without merit. *Res judicata* bars the relitigation of issues that have been previously resolved to finality. *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012). We do not agree that consideration of Father's relocation was a "relitigation" of matters resolved in the divorce. The divorce decree incorporated a temporary parenting plan, which was to be in effect until June 2016, when the parties were then to attend mediation to develop a permanent plan. They failed to do so, and it became the responsibility of the court to develop the permanent plan. Father does not cite to any evidence preponderating against the finding that Mother has been the primary caregiver.

With respect to factor (8) Father argues that the trial court did not give proper weight to the seriousness of Mother's criminal record. Mother testified that she had been charged with and pled guilty to two counts of sale of a Schedule III drug, that she had no prior criminal history, and was placed on pretrial diversion. In paragraph 6, the court stated that it did not "see Mother as part of the criminal element in Wayne County," and that her experience did not "make her a bad Mother." Father does not cite to evidence which preponderates against the holding, rather, he argues that the evidence supports a different conclusion. Trial courts are free to give the evidence the weight the court deems appropriate, and appellate courts do not reweigh the evidence. This court does not "substitute its judgment for that of the trial court." *Eldridge*, 42 S.W.3d at 85 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The court determined that the eighth factor weighed in Mother's favor, and we afford the court the deference our standard of review requires.

7

With respect to factor (10), Father contends that the trial court incorrectly considered his relocation to Oneida and the relationship which resulted in his remarriage when weighing this factor; Father argues that consideration of these factors is barred by the doctrine of *res judicata* as both occurred prior to entry of the Final Decree of Divorce. We have discussed this argument in our resolution of Father's argument relative to factor (5). For the same reason, this argument with respect to factor (10) is without merit.

Referencing the court's comment regarding confidential informants in paragraph 6 of the order, Father asserts that a finding should have been made in his favor with respect to factor (12). This factor was not put at issue at trial, inasmuch as neither party raised an issue regarding the character of anyone in the other party's home or any other individual who interacted with the children on a frequent basis; the court did not make a finding in whose favor this factor fell. Without the matter being at issue, the court was not required to make such a finding. Further, Father does not cite to evidence in the record supporting his argument; his argument is without merit.

With regard to factor (14), Father contends that because the trial court declined to weigh the factor in his favor, this court should correct the error. The trial court did not make a specific finding as to this factor, and Father fails to cite to any evidence which he contends would support a determination that this factor weighed in his favor. This argument is without merit.

As to factor (15), Father argues, without citation to the record, that "there are very few factors that favor the Mother over the Father." Father merely argues that the court erred in naming Mother the primary residential parent, and that the trial court should be reversed due to this error. Father does not suggest any other pertinent factors overlooked by the court and upon our review of the order, the court discussed and made appropriate findings as to matters customarily considered in fashioning parenting plans. We have not been directed to, nor have we found, any matters ignored or overlooked by the trial court.

## B. Attorney's Fees

Citing Tennessee Code Annotated section 36-5-101, Father submits that he is entitled to his reasonable attorneys' fees for this appeal. Mother requests that this court award her fees on appeal in accordance with Tennessee Code Annotated section 36-5-103(c).[3] The appellate court has the discretion to award reasonable attorneys' fees in

---

[3] Tennessee Code Annotated section 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child,

cases where such a remedy is warranted. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008); *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). Utilizing that discretion, we determine that Mother is entitled to an award of attorneys' fees incurred on appeal; we remand the case to the trial court for a determination of the amount of the award.

## IV. CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed; the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
RICHARD H. DINKINS, JUDGE

---

or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.