FILED
05/24/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 11, 2018 Session

## SHARON K. YUHASZ v. JOSEPH D. YUHASZ

**Appeal from the Chancery Court for Williamson County**
**No. 43271      Deanna B. Johnson, Chancellor**

_____

### No. M2017-00880-COA-R3-CV

_____

Husband appeals the trial court's decision regarding wife's monthly need for spousal support and its division of the parties' marital assets. Wife asserts that the trial court erred in failing to hold that husband dissipated marital assets. We affirm the decision of the trial court and conclude that wife is entitled to an award of her attorney fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Michael T. Fort, Franklin, Tennessee, for the appellant, Joseph D. Yuhasz.

Amy J. Farrar, Murfreesboro, Tennessee, for the appellee, Sharon K. Yuhasz.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Sharon K. Yuhasz ("Wife") and Joseph D. Yuhasz ("Husband") married in October 1982 when they were both twenty-three (23) years old. They were married for thirty-four years and had two children. Wife stayed home with the children and supported Husband's career during most of the marriage. Husband and Wife lived separately beginning in 2003 after Wife discovered pornographic pictures of Husband's female friend on the family computer. At the time of trial, Husband and Wife were both fifty-seven (57) years old.

On June 19, 2014, Wife filed a complaint for divorce on grounds of inappropriate marital conduct and irreconcilable differences. In his answer, Husband admitted

irreconcilable differences but denied the allegations regarding inappropriate marital conduct. He requested that the court dismiss Wife's petition or award the divorce to him. Husband also filed a motion to compel Wife to participate in a vocational assessment and evaluation. Although she agreed in her initial answer to participate in the vocational assessment, Wife filed an amended response to Husband's motion to compel in which she stated that she did not agree to submit to the vocational evaluation and assessment. In an order entered on September 24, 2015, the trial court "decline[d] to find Tennessee Rule of Civil Procedure 35 provides the Court authority to require Wife's participation [in the vocational evaluation]." In order "to allow the vocational expert necessary data for evaluation, the Court direct[ed] Husband [that] he may submit to Wife any necessary Interrogatories necessary to allow the vocational expert to perform assessment and report."

Husband filed a counter-complaint for divorce on November 25, 2015, in which he alleged grounds of irreconcilable differences and inappropriate marital conduct. Wife answered denying inappropriate marital conduct.

The case was tried on September 19, 2016. The court heard testimony from Wife and Husband, and counsel for Husband submitted the deposition of Dana M. Stoller, Husband's vocational expert. The court took the case under advisement and entered a thirty-eight-page memorandum and opinion on December 13, 2016, which includes detailed findings of fact and conclusions of law. The trial court declined to accept the vocational specialist's findings or report based upon its finding that "the information provided to the specialist was not sufficient." The trial court granted Wife a divorce on grounds of inappropriate marital conduct and adultery. The court found the value of the combined net marital assets to be $2,146,114.80 and divided the marital property between the two parties. The small amount of debt would be satisfied with equal portions of the parties' shares of the proceeds when the properties were sold. After analyzing all of the statutory factors, the trial court determined that Husband would pay Wife alimony in futuro in the amount of $4,500 per month until either he or Wife dies or Wife remarries. The court also awarded Wife alimony in solido of $41,961.00 to cover her attorney fees.

Husband filed a motion to alter or amend or for additional findings of fact. In an order entered on April 7, 2017, the trial court granted Father's motion to alter or amend and amended its December 13, 2016 order to require Husband to pay Wife's remaining attorney fees as of the final divorce decree.

Husband appeals and raises the following issues:

> (1) Whether the trial court erred by, *sua sponte*, excluding the expert testimony of Dana Stoller, after the conclusion of the final hearing, without prior notice to the parties.

(2) Whether the trial court erred in calculating Wife's monthly need for spousal support.

(3) Whether the trial court erred in its division of the parties' assets by virtue of its consideration of facts not in the record, mathematical error, and its award to Wife of Husband's Fidelity 401(k) retirement plan.

Wife asserts that the trial court erred in failing to hold that Husband dissipated marital assets. She also argues that she is entitled to her attorney fees on appeal.

ANALYSIS

I. Vocational Expert.

Husband asserts that the trial court erred by, *sua sponte*, excluding the expert testimony of Dana Stoller, after the conclusion of the final hearing, without prior notice to the parties.

The trial court has discretion regarding the admissibility, qualifications, relevancy, and competency of expert testimony. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). We review a trial court's decision to admit or exclude expert testimony under an abuse of discretion standard. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005). An abuse of discretion occurs when a trial court "applies an incorrect legal standard or reaches an illogical or unreasonable decision that causes an injustice to the complaining party." *Id.* (citing *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002)). The admission of expert proof by the trial court is governed by Rules 702[1] and 703[2] of the Tennessee Rules of Evidence.

---

[1] Rule 702 of the Tennessee Rules of Evidence provides: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise."

[2] Rule 703 of the Tennessee Rules of Evidence states:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

It is important to review what happened at trial with regard to the vocational expert deposition at issue here. After Wife and Husband completed their testimony, counsel for Husband announced that his only additional proof was the deposition of Ms. Stoller for proof "which has been filed with the Court."[3] Counsel for Wife then made several arguments concerning the relevance of Ms. Stoller's deposition. For example, she stated that Ms. Stoller did not take into account Wife's current job and that the potential jobs Ms. Stoller listed were all "hypothetical." Counsel for Husband made counter-arguments, and the court then moved on to closing arguments. Counsel for Husband did not move for the deposition to be admitted into evidence, and it does not appear on the list of exhibits.

In order to complete her evaluation of Wife, Ms. Stoller relied on Wife's responses on a questionnaire and her interrogatory responses. In its memorandum and order detailing its decision in this case, the trial court found that "the information provided to the specialist was not sufficient." Therefore, the trial court "respectfully decline[d] to accept the specialist's findings or her Report." The record on appeal does not include the questionnaire, the questionnaire responses, the interrogatories, or the interrogatory responses upon which Ms. Stoller relied. We, therefore, have no basis upon which to conclude that the trial court abused its discretion in excluding Ms. Stoller's deposition testimony and report from consideration in this case.

II. Spousal Support.

Husband next argues that the trial court erred in calculating Wife's need for spousal support as a result of its refusal to consider the vocational expert testimony, failure to consider Wife's support of three adults in her residence, and its *sua sponte* increase of Wife's need above her stated need at trial.

Trial courts have broad discretion to determine the type, amount, and duration of alimony. *Mayfield v. Mayfield*, 395 S.W.3d 108, 114 (Tenn. 2012); *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011); *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). Recognizing that a trial court's award of spousal support is factually driven and results from the balancing of many factors, appellate courts generally refuse to second-guess a trial court's alimony decision unless there has been an abuse of discretion. *Gonsewski*, 350 S.W.3d at 105 (citing *Kinard v. Kinard*, 986 S.W.2d 220, 234, 235 (Tenn. Ct. App. 1998)). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011)).

---

[3] The deposition was filed with the clerk and master on September 16, 2016.

As we have already addressed and rejected Husband's argument regarding the vocational expert, we will proceed to his argument that the trial court erred in calculating Wife's need for spousal support because it failed to take into account that the parties' adult children had been living in Wife's home rent free. The basis for this argument is Tenn. Code Ann. § 36-5-121(f)(2)(B), which provides:

> In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:
> (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or
> (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

This Court has previously recognized that, although the language of Tenn. Code Ann. § 36-5-121(f)(2)(B) concerns only modification of any existing support award, "the public policy expressed in the statute" is relevant to an initial alimony award. *Berkshire v. Berkshire*, No. E2014-00022-COA-R3-CV, 2014 WL 6735385, at *5 n.3 (Tenn. Ct. App. Dec. 1, 2014). We have, therefore, considered, in the context of an initial alimony award, whether a child's cohabitation with a parent is evidence that the parent has less need for alimony. *See Naylor v. Naylor*, No. W2016-00038-COA-R3-CV, 2016 WL 3923790, at *9 (Tenn. Ct. App. July 15, 2016); *Ezekiel v. Ezekiel*, No. W2014-02332-COA-R3-CV, 2015 WL 4916930, at *8 (Tenn. Ct. App. Aug. 17, 2015).

The facts in this case do not support adjusting Wife's need for support due to the presence in her home at the time of the divorce hearing of the parties' two adult children, Adam and Jennifer, and Jennifer's husband. Adam, who is legally deaf, had started a new job in Nashville about two months before the hearing; the job paid about $50,000 per year. Prior to obtaining his new job, Adam went through a period unemployment for about six to eight months. When his previous employer transferred Adam to Nashville about two years earlier, Husband encouraged Wife to allow Adam to live with her and encouraged Adam to live with Wife. Wife testified that, at the time of trial, Adam was still recovering financially from his period of unemployment. He paid all of his own bills, including his student loans, his car payment, his insurance, and his grocery bills. He was looking for an apartment closer to Nashville. Husband did not object to Adam living with Wife until the trial.

As for Jennifer and her husband, they both had good jobs and had recently relocated from Knoxville as a result of Jennifer's husband's promotion and transfer to Nashville. For two months before the trial, they lived with Wife while they sold their

home in Knoxville and purchased a home in the Nashville area. At the time of trial, they had a contract on a new house and were set to close in a few weeks. While staying with Wife, Jennifer and her husband paid all of their own expenses, including groceries.

There is no evidence that Wife's expenses were greater because these three adults were living with her. Wife's uncontroverted testimony is that both children paid all of their own expenses. Husband, who had lived with his girlfriend in an apartment since 2009 and paid all of the rent and utilities, took the position at trial that his living expenses were no greater than they would have been had she not been living with him. Similarly, Wife's living expenses were no greater than they would have been had the children not been living with her. Moreover, Husband testified that he spent between $4,000 and $5,000 every month on his expenses, which he characterized as being "very modest." We do not find the trial court's award of $4,500 a month to Wife to be unreasonable in light of Husband's "modest" expense amount.

Husband further asserts that the trial court erred in failing to consider Wife's cohabitation with the parties' children in determining her standard of living pursuant to Tenn. Code Ann. § 36-5-121(i)(9).[4] In light of the temporary nature of the children's cohabitation with Wife, we find no merit in this argument.

The third prong of Husband's alimony argument is based on the trial court's departure from Wife's stated need of $4,379.55 (in her statement of income and expenses) in its award of $4,500. The trial court found that Wife's monthly expenses were $5,597.78 and that her monthly income was $1,218.23, thereby leaving a deficit of $4,379.55.[5] There is a difference of $120.45 between the need stated in Wife's statement of income and expenses and the amount of alimony awarded by the trial court. As the trial court noted, "Wife will not have very significant funds upon retirement, nor a significant amount of Social Security benefits, due to her lengthy absence from the workforce." Moreover, Wife testified that, once the divorce was final, she would start paying for health insurance, which would cost $50 a week. She also noted that her income and expense statement did not include an amount for home maintenance.

Husband also takes issue with Wife's listed monthly expenses of $250 for "household/sundries" and $150 for "personal care items." His argument is that she could not explain the difference between these two categories at trial and that her need should be reduced by $250 based on her inability to explain what "household/sundries" included.

---

[4] Pursuant to Tenn. Code Ann. § 36-5-121(i)(9), in determining whether to award spousal support and the nature, amount, and length of the award, the trial court must consider as a factor "[t]he standard of living of the parties established during the marriage."

[5] Husband mistakenly calculated the deficit to be $4,253.78 and argues that there is a difference of $246.22 between the amount claimed by Wife and the amount awarded by the trial court. In fact, the difference is $120.45.

Wife testified, however, that household/sundries included "things you need every single month, toilet paper, paper towels, toilet cleaners, window cleaner, toothpaste, mouthwash, dental floss, that's sundries."

We find no abuse of discretion in the trial court's determination that Wife had a need of alimony in futuro in the amount of $4,500.

III. Division of Marital Property.

Husband argues that the trial court erred in its division of the marital assets due to its consideration of facts not in the record, mathematical error, and its award to Wife of Husband's Fidelity 401(k) retirement plan.

Once a trial court classifies divorcing parties' property as marital or separate,[6] the court is to assign the property a value and divide it between the parties in an equitable manner. Tenn. Code Ann. 36-4-121(a)(1); *Jolly v. Jolly*, 130 S.W.3d 783, 785 (Tenn. 2004). An equitable division of property "is not necessarily an equal one." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). "A division of marital property is not rendered inequitable simply because it is not precisely equal or because each party did not receive a share of every piece of marital property." *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) (citations omitted). A trial court has a great deal of discretion in determining the manner in which it divides marital property, and an appellate court will generally defer to a trial court's decision regarding what is equitable unless that decision is inconsistent with the factors set out in Tenn. Code Ann. 36-4-121(c) or the evidence preponderates against the division. *Jolly*, 130 S.W.3d at 785-86. Appellate courts "'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010) (quoting *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007)); *see also Owens*, 241 S.W.3d at 490 ("[I]t is not our role to tweak the manner in which a trial court has divided the marital property.").

The division of marital property "is not a mechanical process" but rather is guided by the factors set forth in Tenn. Code Ann. 36-4-121(c). *Kinard*, 986 S.W.2d at 230. The version of Tenn. Code Ann. § 36-4-121(c) in effect at the time of trial[7] required a trial court to consider the following factors in making its division of marital property:

---

[6] Husband does not contend that the trial court erred in its classification of the assets as marital or separate.

[7] The statute was amended effective July 1, 2017. We cite the version in effect at the time of trial (September 2016).

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c)(2016). A trial court considers and weighs "the most relevant factors in light of the unique facts of the case." *Batson*, 769 S.W.2d at 859.

*Facts outside the record.* Husband argues that the trial court erred by considering facts not in the record. Husband points to three specific facts in this regard. His first contention relates to the parties' rental properties: he objects to the trial court's statement that "Wife's availability to the Parties' renters was significantly greater because she worked part time and because she remained behind in Tennessee from 2009 to 2011 when Husband was temporarily transferred to Shreveport." According to Husband, "the record is completely devoid of any proof Wife was more available to renters" during the time he was in Shreveport and Wife provided "no proof or testimony" that she was more available to renters because she worked part time. We disagree.

- 8 -

Wife's testimony, which the trial court credited, provided the trial court with evidence that she was more available than Husband to assist renters. Wife testified:

> [Husband's] job is very demanding and that is why I only had a part-time job at first because he would call and say so and so needs something or this needs to be done, can you let this guy in? Can you let that guy in? Can you sign this up, and I would pick up and go and do it.

She further stated that it was "extremely typical" for her to meet people at the properties to show them around or do a final walk through with a tenant because "[Husband] was usually tied up with work and so I went and took care of most of it because he was unable to." Husband's only testimony to the contrary was that Wife "did far less than [he] did" in relation to the parties' rental properties. Husband did not specifically address each party's availability to assist renters. Contrary to Husband's argument, there is evidence in the record to support the trial court's findings concerning Wife's predominant role in assisting renters.

The second argument in the "outside the record" section of Husband's brief does not seem to hinge on facts being outside the record. Husband focuses on the following statement by the court at trial: "Husband and Wife will be responsible for capital gains taxes because they have sold or will sell their investment real estate properties." He argues that the trial court's memorandum order is not consistent with the court's finding at trial. In its order, the court stated that Husband and Wife would split the capital gains taxes on the two rental properties in Nolensville. As to the 1408 Bridgecross Place property, which was awarded to Husband, Husband was implicitly made responsible for all related capital gains taxes. Husband argues that making him pay all of the capital gains on the third piece of property is inconsistent with the court's initial finding, which Husband interprets to mean that all capital gains would be equally divided.

We disagree that the trial court's initial statement at trial implied that capital gains would be equally divided between the parties. After dividing the assets, the trial court made each party liable for the capital gains associated with the property awarded to him or her. The two rental properties in Nolensville were sold and the proceeds divided equally between the parties. Husband received the 1408 Bridgecross Place property. We find no error in the trial court's ruling in this regard.

The third point Husband makes with respect to facts outside of the record is that the trial court erred in finding that Husband would have a substantially larger social security benefit than Wife. Husband emphasizes that there is no proof in the record concerning the social security benefits available to either party and that Wife testified that she had not decided when she planned to retire.

We find no merit in Husband's argument.  Tennessee Code Annotated section 36-4-121(c)(10)(2016) required trial courts to consider "[t]he amount of social security benefits available to each spouse" when dividing marital property.  In analyzing this factor, the trial court stated:

> Husband has been in the workforce consistently for over thirty-four years and currently has a high rate of pay.  Wife has not spent a substantial amount of time in the workforce, and has never earned substantial salaries.  Therefore, Husband will have a substantially larger social security benefit upon retirement than Wife can expect.

Thus, the court considered only facts in evidence to reach the conclusion that Wife would not receive as much in social security benefits as would Husband at retirement.

*Mathematical errors.*  Husband next asserts that the trial court made "mathematical errors" in dividing the marital property.  In his brief, Husband identifies only one alleged mathematical error, stating that the trial court "incorrectly computed the equity in 1408 Bridgecross Place to be $91,026.00."  This is the equity figure assigned to the 1408 Bridgecross Place property by Husband himself based on the value of the property in his statement of assets and liabilities submitted at trial.  We, therefore, reject Husband's argument that the amount of equity the trial court attributed to this piece of property is excessive.

*Retirement accounts.*  Husband argues that, in light of the parties' long separation and the conduct of the parties since 2003, the trial court abused its discretion in awarding Wife Husband's Fidelity 401(k) retirement account.  He relies on the case of *Malone v. Malone*, No. E2010-01455-COA-R3-CV, 2011 WL 3066384 (Tenn. Ct. App. July 26, 2011).

We do not find *Malone* to be comparable to the present case.  The *Malone* case involved a marriage of nineteen years and a seven-million-dollar marital estate, which the trial court divided 60% to the husband and 40% to the wife.  *Malone*, 2011 WL 3066384, at *1, *5.  On appeal, the husband argued that the wife should only have received a small percentage of the marital estate because he had contributed ninety percent of the marital assets and because wife became disabled before the marriage and had "sufficient income from sources independent of Husband to support herself."  *Id.* at *9.  This Court rejected the husband's argument and concluded that the trial court's decision was "well within the wide range of discretion in light of the multimillion dollar value of the marital property at issue."  *Id.*

In the present case, Husband and Wife were married for 34 years.  Moreover, contrary to Husband's assertion, the record contains support for the conclusion that Wife contributed to the acquisition and preservation of the marital estate.  She helped maintain

and find tenants for the parties' rental homes as well as provide support and care for Husband, even during their separation. For example, she testified that she bought all of Husband's clothes and handled his medical insurance issues. Wife fulfilled the role of homemaker and mother to the parties' two children, both of whom had significant health problems.

Furthermore, Husband's emphasis upon the length of the parties' separation is misplaced. There is no mention of such a factor in Tenn. Code Ann. § 36-4-121(c), and the court in *Malone* did not identify the length of the parties' separation as a factor in its decision.[8]

The trial court divided the marital property in this case 55.66% to Husband and 44.33% to Wife. At trial, Husband asked the court to award him 56.45% of the marital assets and to award Wife 43.83%. We find no error in the trial court's division of the retirement accounts.

IV. Dissipation of Assets.

Wife raises her own issue on appeal, namely that the trial court erred in failing to hold that Husband dissipated marital assets. In fact, Wife asserts, the trial court "simply failed to rule on the issue of dissipation." We respectfully disagree.

As Wife points out, dissipation is included in the list of factors to be considered by a trial court in the division of a marital estate. *See* Tenn. Code Ann. § 36-4-121(c)(5) (concerning "[t]he contribution of each party to the acquisition, preservation, appreciation, depreciation or *dissipation* of the marital or separate property . . . .") (emphasis added). In *Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010), our Supreme Court made the following statements about dissipation of assets:

> Whether dissipation has occurred depends on the facts of the particular case. 24 AM. JUR. 2D *Divorce and Separation* § 526 (2009). The party alleging dissipation carries the initial burden of production and the burden of persuasion at trial. *Burden v. Burden*, 250 S.W.3d 899, 919 (Tenn. Ct. App. 2007), *perm. to app. denied*, (Tenn. Feb. 25, 2008). Dissipation of marital property occurs when one spouse wastes marital property and thereby reduces the marital property available for equitable distribution. *See Altman v. Altman*, 181 S.W.3d 676, 681-82 (Tenn. Ct. App. 2005), *perm. to app. denied*, (Tenn. Oct. 31, 2005). Dissipation "typically refers to the use of funds after a marriage is irretrievably broken," *Broadbent v.*

---

[8] It is worth noting that Wife asked Husband at several points during the years of separation why they did not get a divorce, and he would prevail upon her to stay married, sometimes holding out hope that they might reconcile.

*Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006), is made for a purpose unrelated to the marriage, and is often intended to "hide, deplete, or divert" marital property. *Altman*, 181 S.W.3d at 681-82. In determining whether dissipation has occurred, trial courts must distinguish between dissipation and discretionary spending. *Burden*, 250 S.W.3d at 919-20; 24 AM. JUR. 2D *Divorce and Separation* § 526 (2009). Discretionary spending might be ill-advised, but unlike dissipation, discretionary spending is typical of the parties' expenditures throughout the course of the marriage. *Burden*, 250 S.W.3d at 919-20.

The wife in *Ball* asserted a number of instances of the husband's alleged dissipation, including bonuses totaling $1,400,000 to a colleague and employees, one of whom was a "paramour," and paying more than $55,000 in cash to various paramours. *Ball*, 301 S.W.3d at 235-36. In affirming the trial court's division of the marital estate (60% to the husband and 40% to the wife), the Supreme Court stated:

Although the more than $55,000 that Mr. Ball spent on his paramours clearly constitutes dissipation, there is nothing in the record to indicate that the trial court did not consider this evidence. Even if we assume that the trial court disregarded these expenditures, its division [of the marital estate] would be well within its wide range of discretion in light of the multimillion dollar value of the marital property at issue in this case.

In conclusion, it is apparent from the trial court's order that the trial court considered the relevant factors enumerated in Tennessee Code Annotated section 36-4-121(c) when equitably dividing the marital estate. In our view, the trial court's failure to explicitly mention "dissipation" taken together with its observation that the parties spent money on a "grand scale" during their marriage suggests that the trial court was not persuaded by Ms. Ball's allegations of dissipations. Moreover, we have thoroughly reviewed the record, and the evidence does not preponderate against the implicit finding. Nor does the evidence preponderate against the remaining findings of fact on which the trial court based its division of approximately sixty percent of the marital estate to Mr. Ball and forty percent to Ms. Ball.

*Id.* at 236-37.

Applying the reasoning of *Ball* to the present facts, we conclude that the trial court properly considered the issue of dissipation. Wife submitted evidence that Husband withdrew approximately $200,000 from a joint account and never adequately accounted for the funds. She further emphasized that Husband had paid all of the rent and utilities for himself and his girlfriend since 2009, and that he admitted to spending money on vacations with his girlfriend as well as repairing her car. In its detailed memorandum

- 12 -

and order, the trial court discussed each of the statutory factors found in Tenn. Code Ann. § 36-4-121(c). With respect to factor five, which addresses dissipation, the trial court stated:

> Husband contributed significantly as the primary wage earner for the family working for General Motors. Husband has wisely invested in money markets, retirement plans, and has acquired valuable real estate to use as income-generating rental properties. *However, Husband has refused to live with Wife, so he has used marital funds to live separate from Wife in order to be with his paramour for thirteen years.*
>
> Wife contributed significantly as a mother and homemaker. Wife dedicated her time to her children and making a home for the family after the Parties' children were born. The children both had significant health needs. Wife was expected by Husband to be at home with dinner on the table when Husband arrived after work. After the children were grown, Wife worked part-time in retail at Macy's and helped manage the Parties' real estate rental properties.
>
> Each party has invested in the marital estate equally with his or her talents. *However, Husband cost the Parties money by keeping a separate home during the Parties' thirteen year separation. He would not agree to a divorce while carrying on a secret relationship with his paramour. If the Parties had lived together during those years, their expenses would have been significantly less. Husband spent marital funds repairing his paramour's car. The paramour lived with Husband since 2009, unbeknownst to Wife.* Wife's expenses are greater than Husband's, but Wife's mortgage is greater than Husband's rent on his Condominium. *Husband admitted to taking over $200,000 from his GM retirement account and claims to have invested it.*

(Emphasis added).

This section of the trial court's memorandum shows that the court took the Wife's allegations of dissipation of assets into account. We, therefore, reject Wife's argument that the trial court failed to consider Husband's dissipation of assets in its ruling on the division of marital assets.

V. Attorney fees.

Wife requests that she be awarded her attorney fees on appeal. Litigants are generally required to pay their own attorney fees unless a statute or contract provision provides otherwise. *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). Tennessee Code Annotated section 36-5-103(c) provides:

The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Pursuant to this statute, this Court has discretion to award attorney fees to a party on appeal in an appropriate case. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). Exercising this discretion, we conclude that Wife is entitled to her attorney fees incurred on appeal.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for the determination of the appropriate amount of attorney fees to be awarded to Wife. Costs of appeal are assessed against the appellant, Joseph D. Yuhasz, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE