IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

## NATHANIEL J. LEE v. AMBER F. LEE

**Appeal from the Circuit Court for Washington County**
**No. 35123     E.G. Moody, Chancellor[1]**
_____

**No. E2019-01653-COA-R3-CV**
_____

In this appeal from a final decree of divorce, Husband challenges the trial court's division of the marital estate and the award of alimony *in futuro*. He also raises issues concerning the court's denial of his request to rescind a mediated settlement agreement and to pay the alimony in solido award in installments. Discerning no abuse of discretion, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON II, J., joined.

Thomas C. Jessee, Johnson City, Tennessee, for the appellant, Nathaniel J. Lee.

K.O. Herston, Knoxville, Tennessee, for the appellee, Amber F. Lee.

## OPINION

### I.

### A.

By the time of trial, the divorcing parties, Nathaniel J. Lee ("Husband") and Amber F. Lee ("Wife") had narrowed the issues considerably. But they remained at odds over the division of two life insurance policies, Wife's earning capacity, and the appropriate amount

_____
[1] Sitting by interchange.

and duration of alimony. The proof at trial primarily focused on these financial disputes and Husband's request that the court set aside a mediated settlement agreement.

Husband and Wife had enjoyed a comfortable lifestyle during the marriage. Husband was a physician, board certified in emergency medicine; Wife was a licensed attorney. Wife began her legal career as a full-time employee at Legal Aid. But after the birth of their first child, Husband and Wife decided that Wife should significantly reduce her work hours. So she opened a small law office where she could work part-time while caring for their children. As Wife viewed her legal practice as a hobby, she often provided legal services pro bono. Husband served as the family's primary breadwinner, earning approximately $31,000 a month.

Wife's earning capacity was hotly contested at trial. Despite her efforts to increase her income from her legal practice, Wife earned only a fraction of Husband's income. She also remained the primary caregiver for their two children, aged six and eight. Husband argued that Wife was underemployed. After hearing all the proof, the trial court agreed, finding that Wife had the capacity to earn $4,000 in gross monthly income as a full-time family law attorney. Neither party challenges this aspect of the court's decision on appeal.

Husband and Wife had been married for almost 17 years. They were both in their forties and in good health. Their financial choices during the marriage resulted in more marital debt than assets. While they were willing to divide the majority of their assets by agreement, they continued to argue over the division of two life insurance policies, with cash values of $79,751.25 and $41,583.36, respectively. Both parties wanted the policy with a higher cash surrender value. With regard to the marital debt, they agreed that Husband should be solely responsible for most of the marital debt, including their liability for back income taxes. Husband acknowledged that he was better equipped to satisfy their debt obligations.

Shortly before Husband filed for divorce, the IRS placed tax liens on both the marital residence and Husband's recently-purchased home. A few months later, in May 2016, Husband and Wife executed a mediated settlement agreement, which directly addressed payment of their IRS debt. The agreement provided,

> With regard to the parties' income tax liability for all years prior to their 2015 taxes, Husband shall take a loan from his SEP-IRA in an amount sufficient to pay off the back taxes and any taxes and penalties due related to said withdrawal. Any taxes and penalties related to the withdrawal from the SEP-IRA are the sole responsibility of Husband, and he shall indemnify and hold Wife harmless thereon. This withdrawal shall be made and the taxes named above paid to the IRS as soon as reasonably practicable.

2

Husband shall repay the loan to his SEP-IRA until the amount in the SEP-IRA is equal to ½ of the account balance on the date the withdrawal was taken out to pay the taxes as stated above. The SEP-IRA shall then be awarded to the Wife as her sole and separate property.

Husband withdrew a substantial portion of the funds in the account to make a lump sum payment to the IRS. But he never restored the account to the specified balance. The parties stipulated that the amount Husband had agreed to repay was $36,137.83.

At trial, Husband asked the court to rescind the mediated settlement agreement and award him the balance of the account to pay off the marital credit card debt. Husband argued that the agreement should be rescinded based on a mutual mistake of fact. The IRS had applied Husband's payment to the couple's unpaid 2014 taxes. According to Husband, the parties were unaware of the 2014 tax liability when they entered the mediated settlement agreement. And Husband claimed that, had he known about the 2014 tax deficiency, he would not have entered the mediated agreement. Wife did not corroborate Husband's story. She confessed that the couple had been behind on their taxes since 2010. And she was never able to convince Husband to address the situation.

The final issue was alimony. Husband conceded that Wife was entitled to alimony, but the two sides remained far apart on the appropriate amount and duration of the award. It was undisputed that Wife was an economically disadvantaged spouse. Husband agreed that the joint decision for Wife to work part-time benefitted his career while placing Wife at an economic disadvantage. Husband's earnings greatly eclipsed Wife's expected earnings, and there was no evidence that additional training or education would allow Wife to earn a more comparable income.

Wife presented evidence of Husband's fault in the demise of the marriage. She also related several instances of his abusive behavior. Husband denied Wife's accusations, maintaining that both spouses shared responsibility for the failure of their marriage.

Wife also emphasized Husband's dissipation of marital assets. During the pendency of the divorce, Husband spent significant amounts of marital funds supporting his new girlfriend, a full-time college student with two children of her own. He paid her rent, her cell phone bills, and her car payment. He also bought her numerous gifts and loaned money to her parents. Eight months before trial, Husband's girlfriend moved into Husband's home. Husband explained that this living arrangement was designed to save him money. One household was cheaper than two. He acknowledged that his girlfriend had full access to his checking account, including permission to forge his signature on checks. And while he claimed she paid half of his household expenses, he had no proof to support this claim.

As evidence of need, Wife presented a statement of expenses showing a monthly deficit of $8,111.35. Husband noted that her expense numbers had increased significantly

from her previous filings. Wife described her latest statement of expenses as "aspirational." It represented what she viewed as a post-divorce standard of living comparable to the standard of living Husband would enjoy. But she also admitted that some of her claimed expenses were law firm expenses, not personal ones.

Husband argued that an alimony award of $1,431 a month for four years would meet Wife's actual need and fit within his ability to pay. He had no income other than his compensation as a physician. And his monthly income was almost completely depleted after debt payments and living expenses.

Like Wife, Husband's expense projections had grown during the course of the litigation. Cross-examination exposed multiple flaws in his calculations. Some of his numbers were inflated; other payments were voluntary. Despite his claims to the contrary, Wife established that Husband had a significant amount of disposable income. During the pendency of the divorce, he spent $27,000 on home renovations, $3,745 on alcohol, and over $2,000 on tattoos. And Wife documented an additional $8,000 that Husband had paid to or on behalf of his girlfriend and her family.

Wife also requested an award of attorney's fees. Husband voiced no objection to Wife's request. He conceded he had paid his attorney's fees using marital funds while Wife had to borrow the necessary funds from her parents.

B.

After hearing all the proof, the trial court granted the parties an absolute divorce on stipulated grounds. The court approved and adopted the agreed Permanent Parenting Plan and ordered Husband to pay $2,492 in monthly child support.

The court divided the vast majority of the marital assets and debts in accordance with the parties' wishes. Finding that Husband had failed to establish grounds for rescission, the court awarded Wife a judgment against Husband for $36,137.83. With respect to the life insurance policies, the court found the "only logical thing to do" was to award Husband the policy on Wife's life and Wife the policy on Husband's life. The court noted that while Wife received the higher value policy, she was also responsible for paying the higher premium.

After considering the relevant statutory factors, the court ordered Husband to pay Wife $3,500 per month as alimony *in futuro*. The court found that Wife was economically disadvantaged and rehabilitation was not feasible. The court determined that Wife needed an additional $3,600 a month to achieve a standard of living reasonably comparable to Husband's post-divorce standard. But given Husband's debt obligations, the court found Husband only had the ability to pay $3,500 a month.

4

At Husband's request, the court held a post-trial hearing on the reasonableness of Wife's requested fees and expenses. After some modifications, the court ordered Husband to pay a portion of Wife's fees and expenses as alimony in solido and entered judgment accordingly.

## II.

On appeal, Husband challenges the trial court's property division and award of alimony *in futuro*. He also contends the trial court erred in denying his requests to rescind the mediated settlement agreement and to pay the alimony in solido award in installments. For her part, Wife seeks an award of attorney's fees incurred on appeal.

We apply the deferential abuse of discretion standard of review to these issues. *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (alimony awards); *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (division of marital property); *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008) (attorney's fees); *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 632 (Tenn. Ct. App. 2002) (rescission). So our review is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We will not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nonetheless, a lower court's discretionary decisions do not escape appellate scrutiny. *Id.* In reviewing discretionary decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.*

Our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). We give great deference to the trial court's credibility assessments. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). We do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). We review questions of law de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

### A.

The trial court has broad discretion to fashion an equitable division of the marital estate. *See* Tenn. Code Ann. § 36-4-121(a) (2017); *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). The factors in Tennessee Code Annotated § 36-4-121(c) guide the court's decision. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010). But application

of the statutory factors is not a mechanical process. *Id.* To reach an equitable division, the trial court must weigh the relevant factors in light of the proof at trial. *See id.*; *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988).

Husband contends that the trial court erred in awarding Wife a judgment for $36,137.83 as part of its equitable division of property. It is undisputed that Husband owed Wife this amount under the terms of the mediated settlement agreement. Settlement agreements are enforceable as contracts. *See Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). To rescind a contract based on mistake, the mistake must be "innocent, mutual, and material to the transaction." *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 261 (Tenn. 2010). Simply put, Husband failed to establish a mutual mistake. Wife contradicted Husband's story about their income tax liability. The trial court credited Wife's testimony on this issue, and we find no basis to overturn the court's credibility determination. *See Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002) ("[F]indings with respect to credibility and the weight of the evidence . . . may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case.").

Husband also argues that the trial court erred in awarding the higher value life insurance policy to Wife because he "consistently made the payments on these policies and . . . was assigned virtually all of the parties' debt but very little assets." A trial court's division of marital property is not judged by the distribution of a specific marital asset. *Morton v. Morton*, 182 S.W.3d 821, 834 (Tenn. Ct. App. 2005). On appeal, we review the overall property division. *Id.* "In the final analysis, the appropriateness of the trial court's division depends on its results." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005).

"[A]n equitable property division is not necessarily an equal one." *Batson*, 769 S.W.2d at 859. Here, the parties agreed to a disproportionate division. This was a long-term marriage. Without question, Husband has a much greater earning capacity than Wife and, by extension, a higher likelihood of acquiring future assets. We recognize that Husband has shouldered the vast majority of the marital debt, but the court took this fact into account when making its decision. As the trial court explained, the higher value policy was accompanied by a higher premium. The converse was true as well. Given these facts, we cannot say the court's division of the life insurance policies rendered the overall division inequitable.

## B.

Much like the division of the marital estate, alimony decisions are fact-driven and "involve[] the careful balancing of many factors." *Gonsewski*, 350 S.W.3d at 105. The court's decision should be made after considering the factors in Tennessee Code Annotated

6

§ 36-5-121(i), particularly the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id.* at 109-10.

The parties agreed that Wife needed some form of alimony. Husband contends that the court chose the wrong type and amount. *See* Tenn. Code Ann. § 36-5-121(d)(1) (2017) (recognizing four types of alimony). The court awarded alimony *in futuro*, a form of long-term support. *See id.* § 36-5-121(f)(1). Alimony *in futuro* is awarded when one spouse is relatively economically disadvantaged and may be only partially rehabilitated or rehabilitation is not feasible. *Id.* § 36-5-121(d)(3), (d)(4), (f)(1). Rehabilitation is not feasible if,

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

*Id.* § 36-5-121(f)(1).

Conceding that Wife is economically disadvantaged, Husband argues that an award of transitional alimony was warranted here. Transitional alimony is appropriate when the court finds that rehabilitation is not necessary but the economically disadvantaged spouse needs financial assistance in adjusting to the economic consequences of divorce. *Id.* § 36-5-121(d)(4), (g)(1). This type of alimony is "designed to aid a spouse who already possesses the capacity for self-sufficiency" but needs temporary financial assistance to adjust to the economic reality of one income. *Gonsewski*, 350 S.W.3d at 109.

Husband points out that Wife is a highly qualified attorney with several years of experience in her field. As such, she "has the skills and ability to grow her practice and support herself." But there is no evidence that Wife's income as a family law attorney will ever enable her to achieve a standard of living after the divorce reasonably comparable to the post-divorce standard of living expected to be available to Husband. Wife spent the vast majority of this marriage supporting Husband in his career, not pursuing her own. She has made commendable progress growing her practice since the parties' separation. Still, Husband earns nine times what Wife is expected to earn.

The trial court's award was not based solely on the economic disparity between the spouses. Other statutory factors also supported an award of alimony *in futuro*, including the duration of the marriage and fault. The court found Husband was at fault in the demise of this long-term marriage. He physically and verbally abused Wife. The court also found that Husband dissipated marital funds during the pendency of this divorce through

7

payments to and for the benefit of his new girlfriend and her family. The evidence does not preponderate against these factual findings.

In the end, the most important considerations in determining spousal support are the "disadvantaged spouse's need and the obligor spouse's ability to pay." *Id.* at 110 (citation omitted). Husband claims that he lacks the ability to pay the amount awarded. While Husband's debt burden is significant, so is his income. Husband was primarily responsible for most of the marital debt during the pendency of this divorce. And yet, these obligations had little discernable impact on his spending habits. After carefully considering the evidence in this record, we cannot say that the evidence preponderates against the court's finding that Husband has the ability to pay $3,500 a month in spousal support.

While the Legislature has expressed a preference for short term support, such as rehabilitative or transitional alimony, rather than long-term support, "courts should not refrain . . . from awarding long-term support when appropriate." *Robertson v. Robertson*, 76 S.W.3d 337, 341-42 (Tenn. 2002). Viewing the evidence in a light most favorable to the trial court's decision, we find no abuse of discretion in the court's alimony award. *See Gonsewski*, 350 S.W.3d at 106.

C.

Husband's final issue concerns the court's award of attorney's fees to Wife as alimony in solido.[2] Husband does not challenge the amount of the award, only the method of payment. Alimony in solido may be paid in a lump sum or by installments. *See* Tenn. Code Ann. § 36-5-121(h)(1). The choice is left to the trial court's discretion. *Id.*

Husband contends that the evidence does not support the court's decision to require a lump sum payment because he lacks the available cash. Still, Husband earns, on average, $31,000 a month. He received property valued at over $400,000 in the division of the marital estate. And he has an open line of credit secured by his residence. We cannot say the court's decision was based on a clearly erroneous assessment of the evidence. *See Gonsewski*, 350 S.W.3d at 105.

---

[2] Contrary to Wife's claims on appeal, this issue has not been waived. *See Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) ("[T]he party asserting waiver has the burden of proof."). Husband raised this issue in the trial court in his post-trial motion requesting a hearing on the reasonableness of the requested attorney's fees and expenses.

D.

Wife seeks an award of attorney's fees on appeal pursuant to Tennessee Code Annotated § 36-5-103(c) (2017).[3] We have the discretion to award attorney's fees incurred on appeal. *Pippin v. Pippin*, 277 S.W.3d at 407; *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). In making our decision, we consider the following factors: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors. *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). In light of these factors, we grant Wife's request. Wife has been largely successful on appeal, and the trial court found that Wife did not have the funds to pay her own attorney's fees "without causing difficulties in the living expenses of her and the children."

**III.**

We find no abuse of discretion in the trial court's rulings in the final divorce judgment. So we affirm the trial court's decision in all respects. We remand this case for a determination of a reasonable amount of attorney's fees to be awarded to Wife and for such other proceedings as may be necessary and consistent with this opinion. On remand, the court may also consider whether to allow Husband to pay the judgments against him in installments in light of the award of attorney's fees on appeal.

.

_____
W. NEAL MCBRAYER, JUDGE

---

[3] The cited statute was amended, effective July 1, 2018. *See* 2018 Tenn. Pub. Acts (ch. 905) 1186. We apply the version of the statute in effect when this divorce action was filed in 2016. *See Sexton v. Carden*, No. E2019-01057-COA-R3-CV, 2020 WL 7240297, at *3 (Tenn. Ct. App. Dec. 9, 2020).